MEYER and another *v.* GOODYEAR INDIA-RUBBER GLOVE MANUF'G Co.

*(Circuit Court, D. Connecticut. December 5, 1881.)*

1. REISSUES—NEW MATTER.
    Where a part of the invention of the patentees which was not embraced in the original specification, included in the reissue, was shown in the model, the reissue is not invalid on the ground that it contains "new matter."
2. SAME—PRIOR DECISION—PATENTABILITY.
    Where, by a prior decision of a case involving the validity of a patent, it was decided that the present reissue was not patentable by reason of an earlier patent, argument against the propriety of such decision will not be entertained.

*S. D. Law* and *Benjamin F. Thurston,* for plaintiffs.
*Frederick H. Betts* and *George Harding,* for defendant.

SHIPMAN, D. J. This is a bill in equity to restrain the alleged infringement of reissued letters patent granted to the plaintiffs on November 17, 1874, for an "improvement in India-rubber shoes." The original patent was granted to Christopher Meyer and John Evans, as inventors, on February 21, 1871, and was reissued to the same per-

sons on July 16, 1872. Infringement is not denied. The invention was brought into existence by the fact that, in 1869 and 1870, "four-holed" India-rubber ladies' shoes, or shoes having four slits upon the top of the upper, and made to imitate a lady's sandal, with interstices in the upper, were in great demand, and could not be made rapidly enough at the factory of Mr. Meyer. The edges of these slits or holes were turned over by hand and were then cemented. The idea of the inventors was, instead of cutting the uppers from a plain sheet of rubber and then cementing the ribs upon the plain surface, to cut the uppers from a sheet which, having been formed when in a plastic state between an engraved roller and a plain roller, should be thickened up into cords or ribs at the desired places on its surface. The claim in the patent was "for one or more transverse ribs, in rubber shoes or sandals, formed by thickening the substance itself in the lines or directions thereof while in the sheets, by means of rolling dies, as and for the purpose described."

Before the invention, the edges of the mouth of the shoe were strengthened, and made to present a finished appearance, by being turned over by hand and cemented. Sometimes cords or strips of rubber were placed by hand upon the edge and were cemented. As a part of the invention, but not included in the original specification, claim, or drawings, the inventors ribbed the edge of the mouth of the shoe with a rib formed in the manner which has been described. The first reissue was obtained for the purpose of including this rib within the patent. The claim was as follows: "As a new article of manufacture, India-rubber shoes, with strengthening or other ribs homogeneous with the substance of the body, formed by thickening up the said substance in the forming of the sheet, substantially as specified."

The validity of the first reissue was then tested in this circuit, in the case of *Meyer* v. *Pritchard*, which was tried before Judge Blatchford, (12 Blatchf. C. C. 101.) The court held that there was no patentable novelty in the invention, in view of the patent granted to Silas C. Hyatt and Christopher Meyer, January 17, 1854. The first and third claims of this patent were as follows:

"(1) Producing a shoe sole, or other analogous manufacture, in India rubber or gutta percha, in one piece, having variety of thickness in its different parts, by the use of rollers, whose surfaces present the reverse of the forms to be produced, at a single operation, substantially as herein described. (3) We also claim such soling or analogous manufacture in continuous sheets, at one operation, by rolling, as described."

The present reissue was thereupon granted, in which the claim is limited to the rib around the mouth of the shoe, and is in these words:

"As a new article of manufacture, India-rubber shoes, having a strengthening rib around the top or mouth of the shoe, (whether with or without similar ribs on other parts of the shoe,) formed, not by turning over the edge or lapping one piece upon another, but thickened up from, and homogeneous with and forming a part or portion of, the body of the upper, substantially as specified."

Divers defences are set up in the answer. The two which are relied upon are the invalidity of the reissue, because it is for a different invention from that described in the original patent, and lack of patentable novelty, in view of the Hyatt and Meyer patent of 1854. It is substantially admitted by the plaintiffs that the invention of the second reissue was not suggested or indicated in the original patent or drawings, but it is claimed that the invention was shown in the model which was originally deposited in the patent-office, and that this fact was conclusively found by the commissioner of patents when the first reissue was granted. These positions, both of fact and law, are strenuously denied by the defendant. There are two models in the patent-office purporting to be the models belonging to this patent. One merely shows the ornamented buckle or rosette represented in drawing No. 3, and does not contain the invention of the reissue. The other does not contain the invention in any particular, but is a shoe in which the cords upon the vamp and around the mouth were placed by hand between the lining, and the rubber in accordance with the system described in a rejected application of John Evans, one of the patentees. The Evans and the Meyer and Evans applications were filed on the same day. The theory of the plaintiffs is that the two shoes have been misplaced, and the Meyer and Evans shoe was by mistake placed with the models of the rejected applications and was destroyed in the fire of 1877. The defendant claims to have proved that the models are the same that were originally deposited by the applicants.

Without recapitulating the testimony upon this question, my conclusions are:

1. The rib around the mouth of the shoe was not indicated in the original drawings or in the original specification as a part of the invention, because neither the patentees nor their solicitor had at that time any idea of including this rib in the patent. In view of the file wrapper and contents of the original patent, it is not credible that Mr. Meyer, who was in 1871 a manufacturer, well acquainted with

the questions arising in patent litigation, should have directed his solicitor to include the cord around the mouth, or that his solicitor, who had been an assistant examiner in the patent-office, should have supposed that he was including that part of the invention. The conversation of which they speak undoubtedly took place, but at a later period, and the witnesses are mistaken in the matter of dates.

2. I find from the testimony of Olmstead and Craing that before the application for a patent a new engraved roll was made, upon which a light cord was engraved around the shoe mouth. I further find that by means of this roll a few shoes were made as an experiment, and not for sale. One of these shoes must have been taken to the solicitor.

3. Either this shoe or one made upon this roll was sent to the patent-office, or no model was sent. The presumption is that a model was sent, and this presumption is strengthened by the fact of the first reissue. Notwithstanding the opinion of Mr. Parkinson, I think that this presumption, coupled with the positive evidence in its support, has not been overcome. If a model was sent, it must have been a shoe with a machine-made rib around its mouth, because a shoe showing the machine-made rib upon the upper must necessarily have had the machine-made rib upon the mouth. Inasmuch as the part of the invention of the patentees, which was not embraced in the original specification and is now included in the reissue, was shown in the model, the reissue is not invalid upon the ground that it contains "new matter."

The next position of the defendant is that the patent has no patentable novelty, in view of the Hyatt and Meyer patent, and that this precise question was decided by Judge Blatchford in the *Prichard Case*, and is therefore now the law of this circuit. The plaintiffs contend that the decision was upon a patent claiming India-rubber shoes, with strengthening *or other* ribs, homogeneous with the surface of the body, etc., while the claim of this reissue is limited to India-rubber shoes having a strengthening rib around the mouth of the shoe, and is for a shoe having a rib formed in the old way, but in a location where, by reason of its location, a new and improved article of manufacture is obtained. It therefore becomes important to ascertain the scope of Judge Blatchford's decision. He says, after quoting the specification of the first reissue:

"The invention set forth in this specification, as shown by the description and the claim, is to thicken up the plastic India rubber in desired places, in the sheet, as the sheet is being formed between two rolls, by means of grooves

and ribs on one of the rolls, the other roll being plain, so as to leave the sheet thicker where the India rubber has entered the grooves than it is in the other parts of it, and thus make a sheet which is a flat plane on one side, and has raised ribs or projections on the other side. The application of this idea, developed in the specification, is to make the ribs or projections on that part of the sheet which is to be used to form the upper part of the shoe, that part which covers the top of the foot, and that part which surrounds the opening through which the foot enters the shoe. The advantage set forth is that the ribs or projections thus made are of one substance with the rest of the material, and in homogeneous connection with it, and therefore better and more cheaply, uniformly, and perfectly made than when made by pasting on strips by hand to form the ribs or projections. The patented invention is really complete when the sheet is made by the means described, ready to be made up into the shoe, and to be vulcanized. The process of making the sheet into the shoe, and vulcanizing the shoe, is no different from the process used to make a sheet into a shoe and vulcanize the shoe, when the ribs or projections are formed by pasting strips on the sheet by hand."

The head-note, which correctly states the result to which the court came, is in the following language:

"A sheet made according to the patent to Meyer and Evans is made strictly in accordance with the directions of the earlier patent, without any addition. The sheet of the earlier patent was used to cut therefrom the sole of an India-rubber shoe, the sheet and the sole having a variety of thickness in different parts, and being formed in one piece, at a single operation, by the use of rollers, one of which had a surface of the form to be produced. The sheet of the latter patent is used to cut therefrom the upper part of an India-rubber shoe, such sheet and such upper part having a variety of thickness in different parts, and being formed in the manner above described. The two manufactures are analogous, the sole in the one case, and the upper part in the other, being cut and made from the sheet in the same manner; and the shoe, with the upper part so thickened up, is not a new article of manufacture, in view of the prior shoe with the sole so thickened up."

It is evident, from the tenor of the opinion, that the court did not dwell upon the fact that the claim was a general one for ribs wherever situated, whether for ornament or for utility, but examined the alleged invention as it was presented in the specification and in the product of the factory; i. e., ribs upon the part of the upper which covers the top of the foot, and the part which surrounds the mouth of the shoe, and possessing peculiar advantages which made the shoe a better and stronger and cheaper article than when the ribs were cemented by hand. The court was of opinion that the new shoe was a double use of the old invention, and virtually decided the point in this case. The differences between the second and first reissues are

modifications of statement which emphasize the advantages of a rib around the mouth, but do not draw the invention out of the reach of the adverse criticism of Judge Blatchford. The claim limits the invention to one locality, but in that locality, and with the benefits of the rib to the shoe at that point, patentability was denied in the decision of the present circuit judge. Argument against the propriety of holding that the claim of the present reissue was not patentable by reason of the earlier patent, is argument against the propriety of the decision which was made in the *Pritchard Case*.

The bill is dismissed.