---

### ACME HARVESTER CO. v. FROBES et al.

(Circuit Court, E. D. Missouri, N. D. June 17, 1895.)

#### No. 184.

1. PATENTS—DECISIONS BY OTHER COURTS.
    Where a patent was adjudged void by one circuit court after final hearing on the merits, and afterwards a demurrer to a bill for infringement was overruled by another circuit court, without an opinion, *held,* that the latter decision was not entitled to the same weight as the former, because the grounds of it were not apparent, and because a decision sustaining a patent is not entitled to the same consideration as one declaring the patent invalid.

2. SAME—WHAT CONSTITUTES INVENTION.
    There is no invention in attaching to each end of a hay rake (of the class usually drawn by two horses hitched to the ends respectively) a pole extending forward, upward, and outward, to which the horse may be attached by a breast strap for the purpose of backing the rake from under its load.

3. SAME—HAY RAKES.

The Kenaga patent, No. 259,550, for improvements in hay rakes, *held* void for want of invention, notwithstanding the filing of a disclaimer. Harvesting Co. v. Martin, 33 Fed. 249, followed.

This was a bill by the Acme Harvester Company against William M. Frobes and others for infringement of a patent relating to hay rakes.

Peirce & Fisher (Paul Bakewell, of counsel), for complainant.

Banning & Banning, for defendants.

ADAMS, District Judge. This is an action for infringement of letters patent of the United States, No. 259,550, issued June 13, 1882, to Martin H. Kenaga, for improvements in hay rakes. The complainant brings this action as assignee of the patentee. It is claimed by the complainant that Kenaga invented a new and useful attachment for use on the ordinary horse hay rake or sweep, of the class employed with stackers, and particularly on those rakes of this class which are drawn by horses hitched, one at each end. This attachment consists of poles secured, one to each end of the head of the rake, extending therefrom forward, upward, and outward, in such way as to permit horses attached to a singletree, one at each end of the rake head, to be hitched by a breast strap to the free front end of the poles, and thereby to afford facilities for backing the rake out from under its load, instead of being required to turn the horses around, and draw the rake out, as formerly. These poles are intended also to serve the purpose of guiding the horses while turning the rake, and warding off or keeping the horses from stepping upon or becoming entangled in the teeth of the rake, which project along the ground in front of the rake head and between the two horses so attached to either end of the rake head, as aforesaid. Although reference is made in the specifications of the patent and proof to the advantages of having the two horses so attached to the rake as to be driven by one boy from a seat behind, midway the head of the rake, yet it is admitted by complainant's counsel that the invention, if at all, consists only in the attachment of these two poles to the ends of the rake extending therefrom forward, upward, and outward, for the purposes specified.

The record shows that complainant, prior to 1888, under its then name of Acme Harvesting Company, instituted a suit in the circuit court of the United States for the Northern district of Illinois on this same Kenaga patent, of like character and for like purpose as this, against Stephen Martin et al., and that, upon full hearing, the court (Judge Blodgett presiding), on the 9th day of January, 1888, rendered and entered a final decree on the merits, dismissing the complainant's bill, on the ground that the patent was invalid for want of invention and patentable novelty, and that the decree and judgment in said cause became and was final. On dismissing the bill in that case, Judge Blodgett filed an opinion, which is published in 33 Fed. 249. From this opinion it will be seen that, in Judge Blodgett's judgment, there was no invention involved in the use of these particular poles. He assimilates them, in principle, to the

ordinary thills which have been used, time out of mind, in connection with vehicles mounted on wheels to be drawn or propelled by animal power; and, in so doing, he expressed the manifest meaning of the specification of the patent, which reads as follows:

"If preferred, a pair of thills may be connected with each of the arms, B, B, in which the horse is hitched in the usual way, which construction would be the equivalent of that shown in the drawing. When thills are used, however, it will be advisable to employ the pole, C, by which to hitch the horses' heads as an aid in guiding them, in which case said poles may be relatively light."

After the entry of final decree by Judge Blodgett in the Martin Case, the complainant, on the 14th day of May, 1892, filed in the United States patent office a disclaimer, in which, after reciting the grant of letters patent to Kenaga, and the mesne assignment by which the complainant acquired the rights of the patentee, the following appears, namely:

"And your petitioner further represents that it has reason to believe that, through inadvertence, accident, or mistake, the specification and claim of said letters patent are too broad, including that of which the said Martin H. Kenaga was not the first inventor; and your petitioner hereby enters its disclaimer to the following matter occurring between line 67 and 77 of the specification of said patent, viz.: 'If preferred, a pair of thills may be connected with each of the arms, B, B, in which the horse is hitched in the usual way, which construction will be the equivalent of that shown in the drawing. When thills are used, however, it will be advisable to employ the pole, C, by which to hitch the horses' heads as an aid in guiding them, in which case said poles may be relatively light.' Your petitioner hereby disclaims a horse rake having the horses independently attached at the ends of the rake, and having the projecting draft bars in combination with forwardly projecting poles, except when such projecting poles are arranged so that the free front end of each is brought forward, upward, and outward from the ends of the rake head."

Besides the disclaimer, complainant has produced some additional evidence beyond that taken in the Martin Case, tending to show that straight poles would not accomplish the functions contemplated by the Kenaga patent, and also showing that the attachment of the poles extending forward, upward, and outward, as in the Kenaga patent, serve a useful purpose. Except as supplemented by the disclaimer and this additional evidence, the case is submitted on the same proof used in the Martin Case.

Complainant insists that, by virtue of the disclaimer and additional evidence, the case as now presented is substantially different from that presented to Judge Blodgett. By way of argument, counsel for complainant say that Judge Blodgett obviously did not take into consideration the peculiar features of the poles now claimed by them to be novel, but, on the contrary, construed the claim of the Kenaga patent to cover broadly the mere attachment to the ends of an ordinary sweep rake of the ordinary poles, such as are common to all vehicles.

On a careful consideration of Judge Blodgett's opinion, I cannot agree with counsel on this point. The Kenaga patent, including a drawing of the rake showing the attachment of the poles and their projection forward, upward, and outward, was before the court in the Martin Case, and Judge Blodgett, in his opinion, makes manifest reference to these peculiar poles. He says:

"If a person using such a rake conceived the idea that it would be more convenient to handle the rake to some extent by means of a guiding pole or backing pole, like that shown by this patent, it seems to me that with the common knowledge which exists among all those who have been in the habit of using horse rakes, that they had been backed and guided by means of a pole, there was no invention in applying a pole to rakes of this kind for that purpose."

The disclaimer, therefore, leaves the patent substantially as considered by Judge Blodgett; and the additional evidence taken in this case is cumulative in its character, and relates mainly to the utility rather than the novelty of the device. The case, therefore, now before the court, is substantially the same as the one before Judge Blodgett.

The rule is well established that where a court of co-ordinate jurisdiction has, on full hearing, declared a patent invalid, this court will not reconsider the case, unless there was in the former adjudication manifest error in law or manifest mistake in fact. Meyer v. Manufacturing Co., 11 Fed. 891; McCloskey v. Hamill, 15 Fed. 750; Cary v. Manufacturing Co., 31 Fed. 344; Kidd v. Ransom, 35 Fed. 588. I find no such manifest error or mistake. On the contrary, it seems to me that the conclusion reached by Judge Blodgett is correct.

The fact that, in a case instituted subsequent to the decision of the Martin Case by this complainant against the Famous Manufacturing Company, in the United States circuit court for the Southern district of Illinois, on the patent now under consideration, the court overruled a demurrer to the bill of complaint, does not, in my opinion, detract from the force and effect to be given to the decision upon the merits of the Martin Case by Judge Blodgett. Judge Allen, before whom this demurrer was heard, wrote no opinion; and it is impossible, from the record entry overruling the demurrer, to say that the court necessarily intended to rule that the patent was valid. But, if such were the intention, it would not change the result. A ruling declaring the validity of a patent is not entitled to the same consideration as a ruling declaring the patent invalid.

In Robinson on Patents (volume 3, § 1184) it is said:

"Judgments against the patents are, for obvious reasons, of higher value and wider influence, since a patent invalid upon any ground is invalid against all the world; and therefore any decision declaring it void, though in a different tribunal and between other parties, affords a presumption of its invalidity which the plaintiff can with difficulty overcome."

For the foregoing reasons, the opinion expressed by Judge Blodgett in the Martin Case must be held to be the law of this circuit, with respect to the patent under consideration, until the appellate court rules otherwise. The bill is accordingly dismissed.