SIMPLEX WINDOW CO. v. HAUSER REVERSIBLE WINDOW CO. et al.

(Circuit Court of Appeals, Ninth Circuit. February 11, 1918. Rehearing Denied April 1, 1918.)

No. 3004.

1. PATENTS ⟪⟫311—SUIT FOR INFRINGEMENT—ISSUES.

   Where defendant in an infringement suit does not deny the validity of the patent, nor set up any prior use, invention, or patent, evidence of such prior invention or patent is receivable only to show the state of the art, and to aid in the construction of the patent.

⟪⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. PATENTS ☞312(1)—SUIT FOR INFRINGEMENT—EVIDENCE.
     That defendant's alleged infringing device is made under a later patent is not presumptive evidence of noninfringement.

3. PATENTS ☞328—VALIDITY AND INFRINGEMENT—WINDOW.
     The Soule patent, No. 1,072,669, for a window of the swinging sash type, covers an automatically operating device for holding the window in any desired position, and, while for a combination of old elements and by no means a pioneer patent, is valid, and marks a distinct advance in the art, and is entitled to a range of equivalents in proportion to such advance. As so construed, *held* infringed.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Frank H. Rudkin, Judge.

Suit in equity by the Simplex Window Company against the Hauser Reversible Window Company, Frederick Hauser, and Jessie Hauser. Decree for defendants, and complainant appeals. Reversed.

John H. Miller, of San Francisco, Cal., for appellant.

Scrivner & Hettman and Frank R. Sweasey, all of San Francisco, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. This suit was commenced in the court below by the present appellant against the appellees, for the alleged infringement of two certain letters patent, numbered, respectively, 1,072,669 and 1,159,604. After trial the court held that there was no infringement, and accordingly gave judgment for the defendants to the suit, resulting in the present appeal by the complainant.

[1] In this court the appellant has abandoned all claims under its patent numbered 1,159,604, and contends for a reversal of the judgment only by reason of its first patent. For the appellees it is contended, and has been elaborately argued, that that patent is invalid, the answer to which contention is that its validity was not denied in the court below, the defense there being made solely on the ground of noninfringement—the defendants denying that they have ever jointly or severally made or used or sold any device containing or embodying the inventions patented in and by the two letters patent under which the complainant claimed, and, on the contrary, alleging in effect that the only device they made, used, or sold was one of which the defendant Frederick Hauser was the original and first inventor, and which was duly patented to him October 20, 1914, by letters patent numbered 1,114,260. The defendants by their answer did not set up any prior use or prior invention or prior patent to those under which the complainant claimed, and such defenses were receivable in evidence only to show the state of the art, and to aid in the construction of the patent. Morton v. Llewellyn, 164 Fed. 693, 694, 90 C. C. A. 514, and cases there cited.

[2] Nor can the contention on the part of the appellees be sustained that the patent under which they claim is presumptive evidence that there was no infringement by them of the appellant's prior patent. The cases hold that it is presumptive evidence of a difference of that

patented device from the prior patent of the appellant, but not presumptive evidence of any infringement. Miller v. Eagle Mfg. Co., 151 U. S. 186, 208, 14 Sup. Ct. 310, 38 L. Ed. 121; Herman v. Youngstown Car Mfg. Co., 191 Fed. 579, 585, 586, 112 C. C. A. 185; Murray v. Detroit Wire Spring Co., 206 Fed. 465, 124 C. C. A. 371; Curry v. Union Electric Welding Co., 230 Fed. 422, 429, 144 C. C. A. 564; General Electric Co. v. Electric Controller Co., 243 Fed. 188, —— C. C. A. ——; Acme Harvester Co. v. Frobes (C. C.) 69 Fed. 149.

The latter question—that is to say, that of infringement—is for the decision of the court, to determine which it is essential to ascertain, in the first place, what the invention was that is covered by the prior patent; next, the construction to which that patent is entitled, taking into view the prior state of the art; and, finally, whether or not there has been an infringement of the prior patent by the device of the appellees which they confessedly have made, used, and sold.

[3] Looking at the appellant's patent, the invention covered by which was made by one Soule, we find the inventor states in the specification of his application for letters patent, among other things, as follows:

"My invention relates to windows, and especially to windows of the swinging reversible sash type; and it has for its object to provide a new and improved window of the character specified, which, while remaining in a state of stable equilibrium in whatever position it may be placed, may readily be moved from any position to any other.

"With this object in view, my invention consists in a sash slidably pivoted in a window frame, adjuster arms having one end fixedly pivoted in and slightly above the middle points of the stiles and the other end slidably pivoted in the frame, and carrier arms having one end fixedly pivoted in the frame and the other end fixedly pivoted to the adjuster arms.

"It also consists in the combination, with a frame, sash, adjuster arm, and carrier arm, of a plate having means for automatically adjusting its position on the frame.

"It also consists in the novel parts, combinations, and arrangements set forth in the following description, particularly pointed out in the claims, and illustrated in the accompanying two sheets of drawings"

—some of which drawings, as well as some of the drawings illustrating the Hauser patent, will be subsequently inserted.

The three claims of the patent alleged to have been infringed are the first, fourth, and seventh, which claims are as follows:

"1. A window, comprising a frame, a sash slidably pivoted in said frame, adjuster arms, one end of which being fixedly pivoted at points slightly above the middle of the sash stiles and the other end slidably pivoted in the frame, and carrier arms, one end of which is fixedly pivoted in the frame and the other end fixedly pivoted to the corresponding adjuster arm."

"4. A window, comprising a frame, a sash in said frame, an adjuster arm pivotedly secured at one end to said frame and at the other end to said sash, and a carrier arm pivotally secured at one end to said frame and at the other end to said adjuster arm."

"7. A reversible window, comprising a sash, an adjuster arm of suitable length, a carrier arm supporting said adjuster arm and window sash, a slidable pivoted connection between said frame and one end of said adjuster arm, and a pivoted connection between the other end of said adjuster arm and points near the middle of the sash stiles about which said sash is rotatable."

One thing is manifest from that portion of the specification above quoted, which is that the Soule invention was but an improved win-

dow of the character therein specified, namely, "windows of the swinging, reversible type"; for such is the inventor's express declaration. There is therefore no ground for the appellant's contention that reversible windows were new before the Soule invention.

Two specimens of the prior art introduced in evidence by the appellees are a patent issued to Oscar Frotscher, November 28, 1893, in which that inventor said in his specification, among other things, that his invention—

"relates to certain new and useful improvements in windows of that class in which provision is made for allowing the sliding sash to be swung out or reversed if desired, for cleaning or other purposes, and it has for its object, among others, to provide a window of this class which can be cheaply made, easily operated, and not liable to get out of order. It has for a further object to provide simple, yet efficient, means for holding the sash inclined for ventilation, and for a still further object the provision of means for firmly holding the sash in position for cleaning."

The second was the ordinary awning device, which the appellees contend disclosed every feature, mechanical and structural, of that of Soule, except in minor details of construction.

Regarding the Frotscher device, the model of which was introduced in evidence, the defendant Frederick Hauser himself testified:

"I never have made any windows like that. I didn't want to make them like that. They are useless. I found out they are useless, with windows made that way; so I got up my own idea, which is a useful device. The other one is not a practical or a useful device. I say it is not a useful device. No, you can not use it; but I would like to explain it a little better. You can use it, but it is, in other words, not practicable, not a practicable device. They do not use it at all any more. They used to use it, but they hardly don't use it any more, not even on stepladders."

And in respect to the awning device the witness Vale testified on behalf of the plaintiff in the suit as follows:

"In the first place, the function of the slide in the awning support is to get the support, which in this instance corresponds to the carrier arm, on a horizontal, so that it will not strike the heads of persons passing under the awning, and any one who has ever watched the operation of an awning will notice that practically the whole canvass forming the awning will be lowered to position before this carrier arm will suddenly flop out to a horizontal position, and it remains there until the awning is rewound practically to its whole extent, and then that arm will drop down again. It does not go through any synchronous movement in raising and lowering the awning."

And the testimony of the appellees' witness Behnke as to that device is much the same in substance, which testimony we think is in accord with the ordinary understanding of the working of an awning. Neither of the devices thus referred to by the appellees can, in our opinion, be regarded as anticipatory of the patents of either the appellant or the appellees.

It is apparent that each of the claims of the appellant's patent alleged to have been infringed is a combination claim composed of old elements—claim 1 consisting of a frame, a sash slidably pivoted in the frame, adjuster arms having one end fixedly pivoted at points slightly above the middle of the sash and the other end slidably pivoted in the

frame, and carrier arms having one end fixedly pivoted to the frame and the other end fixedly pivoted to the adjuster arm. Claim 4 consists of a frame, a sash, an adjuster arm pivotally secured at one end to the frame and at the other end to the sash, and a carrier arm pivotally secured at one end to the frame and at the other end to the adjuster arm. Claim 7 consists of a sash, an adjuster arm, a carrier arm supporting the adjuster arm and the sash, a slidably pivoted connection between the frame and one end of the adjuster arm, and a pivoted connection between the other end of the adjuster arm at a point near the middle of the sash about which the sash is rotated.

The following illustrations are taken from the Soule patent:

Fig. 4

Fig. 6

Fig. 5

Fig. 7

As we understand the Soule device, it is an automatically operating one for holding the window in any desired position; and while his patent cannot, in our opinion, be properly regarded as a pioneer one in any sense, we think the improvement invented by the appellant's assignor marks such a distinct advance in the art over anything theretofore existing, so far as has been shown, as entitles the patent to the protection of the doctrine of equivalency in proportion to such advance. American Can Co. v. Hickmott Asparagus Canning Co., 142 Fed. 141, 73 C. C. A. 359, and cases there cited; Miller v. Eagle Mfg. Co., 151 U. S. supra, 186, 207, 14 Sup. Ct. 310, 38 L. Ed. 121.

The patentee of the Hauser patent, which was issued October 20, 1914, set forth, among other things, in his specifications, the following:

"One object of the present invention is to provide means for so securing window sashes in window frames that they can be swung horizontally and reversed, to permit both sides of the sash to be readily cleaned from the inside of the room.

"A further object is to provide such fastening means, which will be simple and inexpensive, and which can be readily secured in place by a carpenter having no special skill or experience.

"A further object is to provide such fastening means, which can readily be adapted to the usual slidable window sashes, to convert them into swinging reversible sashes."

The following figures are illustrative of his device:

It is apparent, from a comparison of the two devices, that they both produce the same result. The real question is: Do they do so by substantially the same means? It is needless to cite the numerous cases in support of the law clearly stated in section 348 of Walker on Patents, the substance of which is that changing the relative position of the parts of a machine does not avert infringement, where the parts transformed perform the same respective functions after the change as before, but that such change does do so where the changing of those positions so changes the functions of the parts that the machine acquires a substantially different mode of operation, even though the ultimate result remains the same.

Like the claims of the Soule patent, those of the patent to Hauser are also combination claims of old elements. In fact, the two devices are very much alike. In each the window is reversible and can be held in stable equilibrium at any desired point; each has an adjuster arm, a carrier arm, and a sliding mechanism in connection therewith by which the same result is attained—the chief difference being that in the Soule device the lower end of the adjuster arm is slidably pivoted in the window frame and its outer end rigidly pivoted therein, whereas in the Hauser device the lower end of the adjuster arm is rigidly pivoted in the window frame and its upper end slidably pivoted in the window sash by means of the link numbered 19. In other words, in the one the sliding mechanism is located in the window frame, and in the other in the window sash. We are of the opinion that this is a mere change of location, and that the means adopted by Hauser are the mechanical equivalent of those adopted by Soule, accomplishing the same result by substantially the same operation, and that accordingly the alleged infringement is sustained. We think this conclusion well supported by the decision of the Supreme Court in Ives v. Hamilton, 92 U. S. 426 23 L. Ed. 494.

The judgment is reversed, and the case remanded for further proceedings in accordance with the views above expressed.