## KELLER et al. v. ADAMS–CAMPBELL CO., Inc., et al.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1923. Rehearing Denied March 12, 1923.)

No. 3881.

1. **Patents ⬅22—To be "equivalents," one device must perform same function as the other in substantially the same way.**

For one device to be the equivalent of another, it must perform the same function in substantially the same way.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equivalent (in Patent Law).]

2. **Patents ⬅138(2)—Intervening rights entitled to protection against reissue.**

Defendant, who, after originating a device and then learning of complainants' patent, submitted his device to the attorneys who secured the patent, and, on their assurance that it did not infringe, placed it on the market, *held* to have acquired intervening rights entitled to protection from a reissue of complainants' patent.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Suit in equity by Clarence D. Keller and Arthur C. Lillie, doing business as the Hartford Windshield Company, against the Adams-Campbell Company, Inc., and others. Decree for defendants, and complainants appeal. Affirmed.

The following is the memorandum of the court below:

This case involves an alleged infringement by the defendants of what is called in the proceedings a windshield wing, and especially, concerning said windshield wing, the bracket by which the glass of the wing is attached to the other apparatus of the wing of the windshield. This litigation turns largely and primarily upon the limitation in claim 1 of the original patent and the reissued patent which, as an element in the claim, reads as follows: "Brackets engaging said member at its upper and lower ends." That refers to the brackets of the wing of the windshield which hold the glass. The glass, according to this patent, is held by a bracket that runs along up and down the glass, and holds it at the top and the bottom. The defendants' device holds the glass by means of a clamp or fixture, which attaches to the face of the glass and does not extend to the ends of the glass.

The drawings and specifications in the original patent accurately describe the plaintiff's invention, as exhibited to the court. The claims in the original patent particularly point out and distinctly claim, in so far as the disclosures appear in said patent, the part, improvement, or combination which the patentee claims as his invention. It is manifest that the patentee was not guilty of inadvertence, accident, or mistake in making the claims in the original patent, in so far as the same are described in the drawings and specifications; that is to say, the drawings and specifications clearly describe this invention as exhibited to the court, and the claims read upon the description, and claim everything that is disclosed therein.

The defendants' bracket is an invention. It is a surprise to me that that which the defendants did could be done. The bracket will fit any glass. It is shorter, and does not obstruct the view. It is believed to be more artistic. The defendants' bracket is not an equivalent of the bracket in plaintiffs' origi-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

nal patent, because it does not perform the same functions in the same way, but it performs the function of holding in the glass in an entirely different way. Before the defendants did anything looking toward the manufacture of their device, they took the precaution, and incurred the expense, of consulting an attorney as to whether or not their device would be an infringement of the plaintiffs' patent. Criticism is indulged in by the plaintiffs as to this conduct of the defendants, claiming that the defendants deliberately did what they did do. I think that the defendants did the right thing. They should not have undertaken to manufacture this device, or incurred any expense concerning it, without first consulting an attorney. The defendants certainly sought the advice of an attorney who was capable of advising them on the subject. After having this advice, the defendants undertook the manufacture of their invention, and undertook it prior to the time of the plaintiffs' application for reissue of patent. They expended some money, and prepared to manufacture, and did manufacture, some of the devices as invented by the defendants. They did not expend a great deal of money. But I do not think that an estoppel or an intervening right can be measured by the amount of money expended in the manufacture, or in getting up the device, or in investigating their right to manufacture.

There is nothing disclosed in the patent, or in the original exhibit produced here, or in the drawings and specifications, indicating that the plaintiffs or patentee ever thought of the device as made by the defendants, and the defendants having made this device, and it having appeared in public prior to the application for reissue by the plaintiffs, it does not seem to me that the plaintiffs should be entitled to a reissue of patent covering something which somebody else has invented, and which it does not appear that they ever disclosed to the public prior to the invention of the defendants. Of course, this would not be an invention, if it had been disclosed to the public by the patentee prior to the invention of the defendants.

Without further discussion, I think the defendants occupy the position of one who has intervening rights, and under those circumstances I think the plaintiffs are not entitled to a reissue of the patent as against the defendants.

The bill will therefore be dismissed. The defendants will prepare a decree and follow rule 45 of this court.

Chas. E. Townsend, of San Francisco, Cal., and James E. Kelby, of Los Angeles, Cal. (Wm. A. Loftus, of San Francisco, Cal., of counsel), for appellants.

Frank L. A. Graham and Ford W. Harris, both of Los Angeles, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The basis of this suit was a reissued patent of July 20, 1920, to the appellant Keller for claimed new and useful improvements in windshields for automobiles. The original patent to him was issued November 12, 1918, in which he stated:

"It is common practice to fit automobiles with a transversely extending transparent shield, which is secured within a suitable frame and mounted upon the dash of the vehicle body. Due to the narrow width of these shields, the wind draws in around the edges and creates considerable draft within the vehicle. It is the principal object of this invention to provide auxiliary transparent shield members, which may be secured in an adjustable manner at the opposite sides of the main windshield, and more thoroughly prevent the creation of a draft through the vehicle body.

"Another object of this invention is to provide a windshield of the above class which does not require the use of a large mounting frame and may thereby be held in position without obstructing the view.

"Another object of this invention is to provide a peculiar pivotal mounting for the shield, which will allow it to be universally moved throughout a horizontal plane and in relation to the edge of the main shield.

"Another object of this invention is to provide simple operating means for instantly locking the pivotal mounting in any desired position.

"It is a further object of this invention to provide a windshield which will be neat in its design, simple in its construction, and will act to enhance the appearance of the vehicle upon which it is mounted, rather than to depreciate it."

Accompanying the foregoing with illustrative drawings and their explanations, the patentee made the following three claims:

"1. In an auxiliary windshield, the combination, with a vertical supporting post, of a transparent shield member, brackets engaging said member at its upper and lower ends, means whereby said brackets may swing horizontally to adjust the shield, a secondary hinge adapted to act in combination with said first-named hinge to allow the shield to have universal horizontal movement in relation to the supporting post, and means whereby the two joints of the shield may be simultaneously locked.

"2. In an auxiliary windshield, the combination, with a vertical supporting post, of a transparent shield member, brackets engaging said member at its upper and lower ends, means whereby said brackets may swing horizontally to adjust the shield, a secondary hinge adapted to act in combination with said first-named hinge, to allow the shield to have universal horizontal movement in relation to the supporting post, means whereby the two joints of the shield may be simultaneously locked, and means for detachably securing the shield upon said post.

"3. In an auxiliary windshield, a rectangular windshield glass, upper and lower supporting brackets having channels in which the glass is mounted, and having aligned bearings at one side of the glass, a spacing sleeve having its ends rotatably mounted in the bearings, a shaft extending through the bearings and through the sleeve, a lock nut upon the shaft for tightening the bearings upon the sleeve, a knuckle joint bracket having two parallel bearings, said sleeve being mounted in one bearing, there being a horizontal bore through the bracket and connecting the bearings, and there being a passage through the sleeve in line with the bore, and there being a tapered face upon the shaft in line with the bore, a lock nut mounted in the bore and having a tapered end engaging said tapered face, mounting bracket having ears between which the other sleeve bearing is mounted, and a hinge pin inserted through the ears and bearing and having a recess to receive the other end of the lockbolt, said mounting bracket being adapted for engagement with the side post of a windshield, so that by loosening the lock nut upon the shaft the parts may be loosened to move the windshield to a desired position, and then by tightening the lock nut the parts may be held rigid with the main windshield."

In the reissued patent of July 20, 1920, the first three claims are identical with the 3 claims of the original patent, besides which there are 20 other claims.

[1] That there is nothing of a pioneer nature in Keller's device is abundantly shown by the numerous exhibits appearing in the record of windshields and deflectors, of one kind and another, attached to automobiles long before Keller entered the field. Both his drawings and specifications show that his shield is attached to the machine by brackets that run up and down the glass, holding it at the top and bottom, whereas the appellee's device holds the glass by means of a fixture attached to the face of the glass and which does not extend to either of its ends. That for one device to be the equivalent of another it is essential that the former must perform the same function of the latter

in substantially the same way is thoroughly settled law. Machine Co. v. Murphy, 97 U. S. 120, 125, 23 L. Ed. 935; Werner v. King, 96 U. S. 218, 230, 24 L. Ed. 613; Simplex Window Co. v. Hauser Reversible Window Co., 248 Fed. 919, 926, 161 C. C. A. 37; Dey Time Register Co. v. Syracuse Time Recorder Co. (C. C.) 152 Fed. 440, 451; Walker on Patents, § 348; Curtis, Patents (4th Ed.) § 310.

[2] The evidence shows that, prior to any knowledge on their part of the Keller patent, the appellees had been working on their device, and had made and sold a few of them, but subsequently learned of and became familiar with the original Keller patent, and before proceeding with the manufacture and sale of their own device, and prior to the making of the application for the reissued Keller patent, they applied to the attorneys who procured the original Keller patent for information as to whether their device was an infringement upon that of Keller, saying that they did not wish to infringe, and, being told that it would not be an infringement, they proceeded with the manufacture and sale of their own on a substantial basis. We therefore think it clear that the appellees had and have such intervening rights as were properly protected by the court below. See Coon v. Wilson, 113 U. S. 268, 5 Sup. Ct. 537, 28 L. Ed. 963; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Dunham v. Dennison, 154 U. S. 103, 111, 14 Sup. Ct. 986, 38 L. Ed. 924; Auto-Piano Co. v. American Player Action Co., 222 Fed. 276, 138 C. C. A. 38.

The decree of the court below is affirmed.