### SUPREME MFG. CORPORATION v. SECURITY MFG. CO.

(Circuit Court of Appeals, Ninth Circuit.   May 12, 1924.   Rehearing Denied June 9, 1924.)

#### No. 4106.

1. **Patents ⬗168(2)—Patentee, by acquiescence in rejection of claims, estopped to claim equivalent construction of those allowed.**

    A patentee by acquiescence in rejection of claims is estopped to claim the benefit of the rejected claims or a construction of those allowed which would be equivalent to them.

2. **Patents ⬗328—14,956 reissue, for improvement in auto theft signals, held void.**

    The Ells reissue patent, No. 14,956, for improvement in auto theft signals, *held* invalid, as broader than the original patent, which covered a specific chock which, when in place, would prevent the rotation of an automobile wheel, while the reissue claims are for a chock which permits the wheel to be "freely rotated with the signal in place," but imparts a bumping motion thereto.

3. **Patents ⬗138(1)—Delay in applying for reissue abandons to the public what was not originally claimed.**

    Where a patentee applied for a reissue with broadened claims 5 years and 5 months after the original issue, it must be presumed, in the absence of a showing that the delay was unavoidable, that he had abandoned the new matter to the public.

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. **Patents ⊚⇒138(2)—Intervening rights entitled to protection from reissue.**

One who has acquired intervening rights between the time of issuance of a patent and application for a reissue cannot be charged with infringement of broader claims of the reissue.

5. **Patents ⊚⇒328—1,343,709, for chock for automobile wheels, held not infringed.**

The Chapman patent, No. 1,343,709, for a chock or lock for automobile wheels, claims 6 and 7, *held* not infringed.

6. **Patents ⊚⇒112(3)—Issuance raises a presumption of patentable difference from devices of prior patents.**

The issuance of a patent raises a presumption that the officials of the Patent Office found a patentable difference between the invention and that of another whose application was then pending.

7. **Patents ⊚⇒72—Making part integral, instead of in two pieces fastened together, is not patentable difference.**

Anticipation is not avoided by making a part in one integral piece instead of two pieces fastened together.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Suit in equity by the Security Manufacturing Company against the Supreme Manufacturing Corporation. Decree for complainant, and defendant appeals. Reversed and remanded, with directions to dismiss.

William K. White, of San Francisco, Cal., and William R. Litzenberg, of Los Angeles, Cal., for appellant.

Frank L. A. Graham and Ford W. Harris, both of Los Angeles, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The court below found that the appellant had infringed claim 2 of the Ells reissue patent, No. 14,956, and claims 6 and 7 of the Chapman patent, No. 1,343,709.

[1] The history of the Ells patent is as follows: Patent issued August 25, 1914, to Ells and McKee, upon an application filed by Ells November 3, 1913. In the application the invention was described as an "improvement in chocks for vehicle wheels," to "provide a chock with means for being releasably locked to an automobile wheel for the purpose of preventing the wheel from revolving, and thereby preventing theft or unauthorized use of the automobile." There were four claims in the application. The first two were broad claims, covering any form of a chock attached to a wheel for the purpose indicated. The Examiner, referring to four American prior patents and one French patent, rejected those claims as being substantially met in the prior art. Ells acquiesced in the rejection, and the patent was issued upon the remaining two claims. The patentees were thereby estopped to claim the benefit of the rejected claims or a construction which would be equivalent to them. Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 14 Sup. 627, 38 L. Ed. 500; Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645.

On August 23, 1918, the Ells patent was assigned to the Miller-Chapman Company, and that company thereafter, in 1918, assigned the

same to the appellee herein. On January 26, 1920, Ells, on behalf of the then owners of the patent, made application for a reissue of his patent, and the same was reissued October 12, 1920. In his oath accompanying the application Ells stated as his reason for applying therefor that all the claims of the original patent "read directly upon and are anticipated and invalidated by a certain patent, No. 997,228, issued November 29, 1910, to Benjamin Schestopol." And in the complaint in the present suit it was alleged that the Ells original patent was void, for the reason that Ells claimed as new more than he had the right to claim. The oath further stated that the effect of the Schestopol patent on the validity of the Ells patent was not brought to the attention of the affiant until January 1, 1920. The evidence was, however, that the original patent had been assigned to Miller on February 21, 1917, Miller being at that time a partner with Chapman for the purpose of manufacturing chocks, and from the file wrapper of the Chapman patent it appears that the attention of Chapman was directed to the Schestopol patent as early as March, 1917. In applying for the reissue, Ells again made broad claims; 14 claims were rejected, and 2 were allowed.

[2] One of the questions for decision is whether the two claims which were allowed were or were not broader in their scope than the claims of the original patent. In the reissue patent the invention is described as an "improvement in auto theft signals." In the original patent the purpose was said to be to prevent the wheel from revolving, and thus to prevent theft or unauthorized use of the automobile, and the two claims which were allowed covered only the specific mechanism of the device. In the claims of the reissue patent there is added to the description of the projection on the device these words:

"Said projection being of such size and shape as to permit the wheel to be freely rotated with the signal in place on the wheel, thus raising the wheel from the ground and imparting a marked bumping motion thereto."

It is obvious that what Ells originally sought to accomplish by his device was a light weight chock which would prevent the revolution of an automobile wheel. By way of excusing its possible failure to accomplish its primary purpose, he pointed out that, even if it permitted revolution of the wheel, it would nevertheless be effective to prevent theft, for it would attract attention by its noticeable irregular and limping movement. It is obvious, also, that no advantage was to be gained by making a chock which would permit rather than prevent the revolution of the wheel. If Ells conceived the advantage of a chock of such light weight as to be easily carried and adjusted in place, he made no claim for it as a feature of his invention in applying for his patent.

There was a delay of 5 years and 5 months in applying for the reissue. In the meantime, on January 4, 1916, Gillespie received letters patent 1,166,828, for a chock for vehicle wheels, the specifications containing the following:

"Unauthorized persons, in attempting to use the vehicle, will be prevented from so doing by the chock, or, even if they should attempt to run the vehicle, the irregular movement of the wheel will prevent any rapid movement of the machine and will render detection a comparative certainty."

On November 14, 1916, Cook and Reid received a patent, 1,204,847, on a device intended "to constitute a chock and prevent rotation." In the specifications it was said:

"In the event, however, that the wheel should rotate, its motion will be so irregular as to attract attention to the car before a thief can escape therewith."

These inventors had no notice from the Ells original patent that Ells had conceived the idea of using a chock as a theft signal, or that he broadly claimed a monopoly of a chock of such size and shape as to permit the wheel to be revolved with a bumping motion and thus to attract attention. These inventors went as far as did Ells in inventing a chock having, as he did, the primary purpose of preventing the revolution of an automobile wheel, but incidentally suggesting, as did he, that if the wheel revolved its irregular movement would direct attention to the fact that the use was unauthorized. Such was the condition of the prior art when Litzenberg, on March 9, 1918, filed application for his patent, which was issued January 28, 1919. He also was without notice that Ells claimed a monopoly of a chock which would permit revolution of the wheel in an irregular or bumping manner, and thus operate as a theft signal. Litzenberg described his chock as one to be applied to a wheel "for the purpose of retarding its rolling action, and for the further purpose of indicating that the automobile, to the wheel of which it is applied, is in all probability being stolen." He was chargeable only with knowledge of what Ells had claimed in his patent; that is, a chock constructed and attached in a described form and manner.

[3] There was nothing in Ells' claims to suggest the broader claim of the reissue patent for an "auto theft signal," with a projection of "such size and shape to permit the wheel to be freely rotated with the signal in place on the wheel." A claim is broadened if it serves to bring within the monopoly an intervening structure which otherwise would be free. The original Ells patent secured to the patentee the exclusive right to a chock, made in accordance with his two claims which were allowed. By the reissue patent the claims are expanded, so that thereunder the appellee now claims a monopoly, as against every chock which the inventive faculty can devise, provided only that it will clear the mud guard, or, in other words, provided that it is not of such dimensions as to prevent the revolution of the wheel to which it is attached. The assignees of Ells, who owned the patent, had, at least two years prior to the reissue, notice of the Schestopol patent, which, it is admitted, anticipated the claims of the Ells patent as they were framed. Where a patentee seeks a reissue with broadened claims 5 years and 5 months after the original issue, it must be presumed, in the absence of a showing that the delay was unavoidable, that he abandoned the new matter to the public. Mahn v. Harwood, 112 U. S. 354, 5 Sup. Ct. 174, 6 Sup. Ct. 451, 28 L. Ed. 665; Woolensak v. Reiher, 115 U. S. 96, 5 Sup. Ct. 1137, 29 L. Ed. 350; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed 658; Chapman v. Wintroath, 252 U. S. 126, 40 Sup. Ct. 234, 64 L. Ed. 491.

[4] The appellant here has intervening rights as against the reissue, for it has acquired the right to manufacture and sell that which Ells

failed to claim, and, having expended considerable sums of money in the manufacture of a device at a time when the original Ells patent was as yet unsurrendered, it cannot be held to infringe the added claims of the reissue. Ives v. Sargent, 119 U. S. 652, 7 Sup. Ct. 436, 30 L. Ed. 544; Autopiano Co. v. American Player Action Co., 222 Fed. 276, 138 C. C. A. 38; Diamond Drill Contracting Co. v. Mitchell (C. C. A.) 269 Fed. 261; Keller v. Adams-Campbell Co. (C. C. A.) 287 Fed. 838; Ashley v. Samuel C. Tatum Co. (D. C.) 240 Fed. 979. We find no conflict between these views and the decision in Abercrombie & Fitch Co. v. Baldwin, 245 U. S. 198, 38 Sup. Ct. 104, 62 L. Ed. 240, cited by the appellee. In the latter case it was held that the reissue did not enlarge the original patent, and the court was of the opinion that the original claims were sufficient in their scope to include, under the doctrine of equivalents, the more explicit claims of the reissue. It is manifest that in such a case there could be no loss of rights by delay in applying for a reissue, and there could be no impediment by way of intervening rights; the original claims being found sufficient to protect the whole invention of the patentee.

[5] The construction to be placed upon claim 6 of the Chapman patent is largely controlled by the proceedings had upon the application in the Patent Office. It there appears that the claim was rejected on the ground that it was substantially met by the patent to Gillespie, No. 1,-666,828, issued January 4, 1916, and the patent to Ells. There was no appeal from that finding of fact, and Chapman canceled the claim. The claim was finally allowed, because of the addition of these words:

"Tapered to form a sharp wedge extending across the device parallel to the axis of the wheel."

Thereby claim 6 was narrowed to a chock in which was used a spike tapered to form a sharp wedge extending across the device parallel to the axis of the wheel. A spike or projection was old in the art, and Chapman was limited to the precise form of spike which he claimed. Otherwise the claim is anticipated by Gillespie and Ells. The appellant used a spike of a different form and shape, and thereby it avoided infringement of Chapman's claim 6.

[6] The appellant's chock was patented to Litzenberg January 28, 1919, by letters patent No. 1,292,822. It was issued before the Chapman patent, but it is subsequent to it, for the reason that Chapman's application was prior in time. The fact that the Litzenberg patent was allowed raises a presumption that the officials of the Patent Office found a patentable difference between his and Chapman's invention, which was pending at the same time. Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 261, 15 Sup. Ct. 837, 39 L. Ed. 973. The Litzenberg patent presents a chock with an integral body surrounding the tire, with one end or arm extending upwardly to a point above the felly, from which projects a second arm, at the end of which is hinged a third arm, adapted to surround a spoke and be locked to the end of the first arm. The radial projection of the chock is a wedge extending at right angles to the axis of the wheel.

Claim 7 of the Chapman patent reads as follows:

"A vehicle shackle for an automobile tire, comprising a member fitting over the tread of the tire and extending upwardly and fitting inside the felly of the wheel on which the tire is placed; a projecting form on said member in such a position that it extends radially from the tread of the tire with the device in place; a means for locking said member on said wheel."

This presents nothing new in addition to the Ells patent and the Eastwood patent, No. 938,990, patented November 2, 1909. The value of the Eastwood patent as indicating the prior art is not lessened by the fact that it was called a "detachable spur," and its purpose was to prevent slipping or skidding. Nor do we think it should be set to one side as belonging to a different art. It is true that it was intended as a calk, but it was to be attached to the rim of the wheel, and it fitted over the tread of the tire, and extended upwardly and fitted inside the felly, and was formed of two integral pieces.

[7] Nor is it important that in the Chapman device the member fitting over the tread of the tire extending upwardly and fitting inside the felly of the wheel is one integral piece, and not composed of two pieces fastened together as in the Ells and Gillespie devices. Consolidated Electric Mfg. Co. v. Holtzer, 67 Fed. 907, 15 C. C. A. 63; General Electric Co. v. Yost Electric Mfg. Co., 139 Fed. 569, 71 C. C. A. 552; Pedersen v. Dundon, 220 Fed. 310, 136 C. C. A. 143. It seems to us clear that the appellant's device avoids infringement of claim 7 of the Chapman device, in that it does not fit over the tread of the tire and, extending upwardly, fit inside the felly of the wheel. It is essential to the operation of both the Chapman patent and the Ells patent that the device shall "fit" the felly, so as to hold the projection in radial extension from the tread, and prevent the rotation of the device about the tire and felly, thus moving the projection to one side of the tread. In brief, in view of the prior art, the Chapman invention is a very narrow one, and the appellee must be held substantially to the precise form in which the invention is presented. The appellant's device, while it fits the tire, does not fit or conform to the felly, nor is it in contact with the felly, except at the point where the lock, which encircles the spoke, rests upon the inner surface of the felly. The device depends upon its attachment to the spoke and its contact with the tire to prevent its lateral turning.

The decree is reversed, and the cause is remanded, with instructions to dismiss the bill.