## ASHLAND FIRE BRICK CO. v. GENERAL REFRACTORIES CO.

Circuit Court of Appeals, Sixth Circuit.
June 18, 1928.

No. 4800.

1. Patents ⚹138(2)—Competitor building non-infringing machines before application for reissue acquired intervening right at least to continue use as if holding license under reissue.

Competitor, building noninfringing machines before application for reissue of patent No. 15,889 for brick machines, at a substantial ex-

pense, and putting them into commercial use on a large scale, making them substantially material to its manufacturing business, *held* to have acquired an intervening right at least to continue use of such machines as if it held a license therefor under reissued patent.

2. Patents ⬤�ený140—Right to reissue within two years requires affirmative showing that state of art permitted broader claim inadvertently omitted.

Right to broaden by reissue within two years is exceptional, and requires affirmative showing, not only that state of art permitted a broader claim, but that failure to get it was result of inadvertence.

3. Patents ⬤➱138(2)—Right to claim estoppel to support private intervening right depends on dedication and existence as continuing offer of immunity.

Right to claim estoppel to support a private intervening right in the nature of license as against a generally valid reissue depends upon dedication and its existence as a continuing offer of immunity, which patentee withdraws by reissue application.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by the General Refractories Company against the Ashland Fire Brick Company. Decree for plaintiff (15 F.[2d] 215), and defendant appeals. Reversed and remanded, with directions.

Jo. Baily Brown, of Pittsburgh, Pa. (Winter, Brown & Critchlow, of Pittsburgh, Pa., and Prichard, Malin & Smith, of Ashland, Ky., on the brief), for appellant.

Augustus B. Stoughton, of Philadelphia, Pa., and John H. Holt, of Huntington, W. Va. (John M. Theobald, of Grayson, Ky., and Holt, Duncan & Holt, of Huntington, W. Va., on the brief), for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

DENISON, Circuit Judge. This is the usual suit for infringement, based upon reissue patent No. 15,889, August 12, 1924, to Tackett, for a brick machine. The defense chiefly relied upon in the court below and here is that, between the date of the original issue and the application for the broadened reissue, the defendant had built and begun to operate its machines in a form which was not covered by the original patent, even though it were by the reissue, and that the defendants had thus acquired such a right, intervening with reference to the original and reissue, as to make it inequitable to enforce against it the later and broader monopoly. For the reasons indicated in his exhaustive opinion, 15 F.(2d) 215, the District

trict Judge concluded that this defense was not good, that the other defenses urged also failed, and that there should be the usual decree for injunction and accounting.

It seems unnecessary to describe the respective structures in any detail. They involve a brick press, a repress, a brick conveyer from the first to the second press, and an interposed trimmer for removing the excess material remaining after the first press. For the purposes of this opinion, but without intending to decide the disputed issues involved, we assume that claim 10 of the reissue, which expresses this concept most broadly, is generally valid and is infringed by defendant's machine; thus we leave for discussion only the doctrine of intervening right as applicable to this case.

Appellee argues that defendant's machine infringed claim 3 of the original patent, that no reissue was necessary in order to reach the defendant's device, and hence that the situation is governed by the Abercrombie Case, 245 U. S. 198, and that no intervening right now material could have arisen. If the proper construction of original claim 3 justified this premise, the conclusion need not be questioned; but we cannot find the necessary breadth of equivalency under claim 3. We think it clear that claim 3 was intended to and did call for a specific form of conveyor containing pushing elements, lifting elements, and transferring elements not found in the same or equivalent form in defendant's machine. Hence the defense of intervening right as here presented must be examined on its merits.

It is not seriously doubted that the expressions and reasoning found in the opinion of this court in the American-Porter Case, 232 F. 456, would be conclusive, in support of the defense, if they were to be taken completely at their face value as things decided. The District Judge in this case, who himself sat as a member of this court in that case, thought that these expressions were dicta and did not conclude him as to the action which he should take here. Whether to characterize as decision or as dicta things that the court or the writer of an opinion says arguendo, it is sometimes difficult to decide. They may or may not be so essential to the conclusion reached, even if they are measurably apart from the final point decided, as to be a part of the law adjudicated. We are not inclined to go into any critical discussion of the American-Porter decision along this line; but we are content to take it, as the District Judge did, as making it necessary, or at least leaving it proper, to

examine the question as if it were in this court wholly open.

[1] The doctrine of intervening right, as a defense in an infringement case based upon a reissue patent, has never been elaborated by the Supreme Court; its nature and force must be picked out from the various assumptions of its existence and more or less incidental applications of it which that court has made. After a further study, as thorough and careful as we can make, the court as now constituted finds itself satisfied to accept and act upon and to adopt the general line of discussion found in the American-Porter Case, and to hold, as we now do, that, because the claims of the original patent were limited as to the form of conveyor, and because after the issue of the original patent and with knowledge of it and expressly appreciating its limited character, indeed, being governed therein by the advice of patent counsel, the defendant built a noninfringing brick machine, and still before the reissue application another one, at a substantial expense, and put them into commercial use on a large scale by extensively selling their product, and thus made them substantially material to its manufacturing business, the defendant thereby acquired at least a right to continue to use these two machines as if it held a license therefor under the reissued patent. The case does not require any further definition of that right.[1] The Supreme Court and the C. C. A. cases which in our judgment tend to support this conclusion are noted in the margin.[2]

[2] It is perhaps the supporting theory of the opinion below that there is a period of two years after the issue of the patent within which the patentee has a right to obtain, by reissue, adequate protection of his real invention; that, if this right is exercised within that time, the charge of laches or abandonment cannot be supported merely by the delay; and that all competitors are bound to take notice of this right to reissue, and cannot predicate upon their acts which were subject to this right the prejudice which is essential to an estoppel. The conclusion was that, if there had not been abandonment or other complete loss of the right to reissue, thus making the reissue invalid as against the whole public, there could be no such thing as an intervening right to infringe peculiar to one competitor by reason of an estoppel which could be alleged on his individual account only. This result might logically follow if there were any such general right to a reissue within the maximum period; but there is not. The right to a reissue is exceptional, and is possessed only by those who can come within the exceptions. It must affirmatively appear, not only that the state of the art permitted a broader claim, but that the failure to get it was the result of inadvertence. There being no presumption that a patent can be reissued, and the special cases where it may be done being relatively few, it does not seem that the public, acting on the faith of things as they are, should carry the burden of a change it has no reason to expect. A competitor, observing that the patent is limited to specific features which he does not care to use, may naturally assume that the limitation was either intentional, or necessary, or both.

[3] In approving and adopting the theory of estoppel to support a private intervening right in the nature of a license as against a generally valid reissue, we do not overlook the difficulty which sometimes exists in finding all the elements of a conventional estoppel. If, within the two-year period and before the defendant, relying on the limitations in the original patent, has acted to his prejudice (e. g., by building a noninfringing machine) the patentee had filed his application for reissue, manifestly the defendant could not claim any intervening right, although he acted upon the faith of the dedication in the original patent, being without knowledge of the reissue application. This consideration is not, we think, inconsistent with the finding of a true estoppel in a case where the reissue application had not been filed thus early. The right to claim the estoppel depends upon the dedication and its existence as a continuing offer of immunity. By his reissue application, the patentee withdraws that offer, in the only generally possible way. When the defendant acts, he knows that the offer may have been withdrawn in this effective but nonpublic way, and he takes his chances upon the existence of such a withdrawal. Lacking any legislation, the loss must fall upon the later comer.

Nor do we overlook the bearing of the

---

[1] It is also not without importance, although we do not consider it as here vital, that the plaintiff was moved to the reissue only by learning that the defendant, a competitor, had built these or one of these noninfringing machines.

[2] Mahn v. Harwood, 112 U. S. 354, 361, 5 S. Ct. 174, 6 S. Ct. 451, 28 L. Ed. 665; Coon v. Wilson, 113 U. S. 268, 5 S. Ct. 537, 28 L. Ed. 963; Parker Co. v. Yale Co., 123 U. S. 87, 8 S. Ct. 38, 31 L. Ed. 100; Topliff v. Topliff, 145 U. S. 156, 165, 169, 12 S. Ct. 825, 36 L. Ed. 658; Autopiano Co. v. American Co. (C. C. A. 2) 222 F. 276, 282; Keller v. Adams Co. (C. C. A. 9) 287 F. 838; Supreme Co. v. Security Co. (C. C. A. 9) 299 F. 65.

decisions in Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491, and Webster v. Splitdorf, 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792. These cases apply the two-year limit reissue rule to cases of analogous broadening by amendment of pending applications. Since in the latter case there is no publication and hence no dedication upon which the defendant may rely, it is suggested that no estoppel can be involved, and that hence it follows that the two-year limit in reissue does not depend on any theory of estoppel. In each of these later cases there was a delay by the applicant, equivalent, as the court thought, to the statutory two-year bar which had been the basis by analogy of the reissue decisions, and this delay was held to be laches which invalidated the patent, just as such delay, whether it be called laches or estoppel in favor of the public generally, invalidates a broadening reissue.

While it must be conceded, as the court below held, that the Supreme Court has never expressly upheld the defense of a private intervening right, or distinguished from the general public intervening rights, but has recognized the unsettled character of the questions (Keller v. Adams, 264 U. S. 314, 44 S. Ct. 356, 68 L. Ed. 705), and while perhaps the basis of the two-year rule as to reissues should be called laches rather than estoppel, yet the name is not important, for it is the reliance by the public on the dedication, to the public's (presumptive) injury, which in the typical case develops mere delay into fatal laches.

For these reasons, the decree must be reversed, and the case remanded, with instructions to dismiss the bill.