## EBY v. KING.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 336. Argued May 1, 2, 1895. — Decided May 20, 1895.

158 366
L-ed 1018
169 611
158 366
L-ed 1018
91f 669

Reissued letters patents No. 7851, granted August 21, 1877, to Henry H. Eby for an improvement in cob-carriers for corn-shellers are void, as being for a different invention from that described and claimed in the original letters, specification, and claim.

It is doubtful whether the Commissioner of Patents has jurisdiction to consider and act upon an application for a surrender of letters patent and reissue, when there is only the bare statement that the patentee wishes to surrender his patent and obtain a reissue.

Whether, when a patent has been surrendered and reissued, and such reissue is held to be void, the patentee may proceed upon his original patent, is considered and discussed, but is not decided.

THIS was a bill in equity to recover damages for the infringement of reissued letters patent No. 7851, granted August 21,

1877, to the plaintiff Eby, for an improvement in cob-carriers for corn-shellers.

The object of the invention was stated to be " the production of a cob-carrier for power corn-shellers, to receive the cobs from the spout of the sheller and deliver them in any desired direction, which is adapted to be adjusted both vertically and horizontally upon its supporting-frame and driving mechanism without interfering with or stopping its operation; and the (my) invention therein consists in mounting the carrying-frame upon a revolving block at its inner end and upon adjustable legs at the outer end, and driving the endless belt by cog-gearing applied at the inner end thereof; and further, in the combination, with such parts, of the central vertical shaft and its connections for transmitting power from a pulley to the inner end of the endless belt, all as fully hereinafter described for effecting the purpose before explained."

The device is illustrated by the following drawings:

*Fig. 1.*

The specification further proceeds:

"In operation, the carrying-frame is located with reference to the corn-sheller in such manner that the cobs can be discharged upon the lower end of the endless belt. Motion being communicated to the pulley $C'$, the endless belt is operated through the gearing described, and the cobs moved to and thrown from the outer or upper end of the carrying-frame. The cobs are delivered into a wagon driven under the end of the carrier, or into any proper stationary or removable receptacle."

"When desired to turn the carrying-frame to either side, to deliver the cobs in any other direction or into other receptacles, the outer end is moved bodily around, which moves the block B and the gearing, and the hook-bolts $b'$ may then be tightened up to hold the parts more rigidly in their new position."

"By means of the devices for supporting the carrier and the gearing for driving the endless belt at the inner end of the carrying-frame, any extent of movement of such carrying-frame is permitted without stopping the operation of the endless belt, and this movement is effected with but little inconvenience and delay. The changing of the direction of the carrying-frame both vertically and horizontally could not be performed with as great facility if the endless belt were driven otherwise than at its inner end, where the least move-

ment is made, or if the said carrying-frame were supported by less efficient means than those described."

There were two claims, which read as follows:

"1. A movable independent cob-carrier wherein are combined a supporting and revolving block, a carrying-frame whose inner end is supported upon said block, and whose outer end is supported upon movable legs and gearing applied at the inner end of the carrying-frame and capable of acting continuously, whether the carrying-frame is fixed in position or being swung to a new position, substantially as described.

"2. A movable independent cob-carrier wherein are combined a carrying-frame supported at its inner end upon a revolving block, and the central vertical shaft and its connections, whereby the said carrying-frame can be adjusted vertically and horizontally without stopping the operation of the endless belt, substantially as and for the purposes set forth."

The defences were that the reissue was void; that the invention was lacking in patentable novelty; and a denial that the defendant had infringed.

Upon a hearing upon pleadings and proofs, the court below was of opinion that the reissue was obtained for the purpose of broadening the claims to cover existing machines, and was consequently void; and also that the defendant had infringed neither the original nor the reissue. Thereupon the court dismissed the bill, and plaintiff appealed to this court.

*Mr. Harold G. Underwood* for appellant. *Mr. Joseph G. Parkinson* was on his brief.

*Mr. John G. Manahan* for appellees.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

As one of the chief defences in this case turns upon the validity of the reissue, it becomes necessary to compare this in some detail with the original patent No. 134.790. which was granted January 14, 1873.

In this patent, figures 2, 3, and 4 of which are here given, it is stated that *b* represents a disk or block, resting upon proper bearings upon the framework *a*, provided with a central orifice through which passes a shaft; that " the inner end of the carrier-frame is pivoted to arms *ee*, rising from the block *b*, as shown," and that "*mm* represent bolts secured in the framework, the upper ends of which are turned over the block *b*, as shown." The specification proceeds: " the carrier may be turned for the purpose of discharging the cobs, in any desired direction, by revolving the block *b*, which supports the carrier-frame, and the main portion of the actuating devices upon its bearings, it being secured in any desired position by means of the hook-bolts *ee*," (evidently meaning the hook-bolts *mm*, Fig. 4).

There were three claims, as follows :

" 1. The combination of the block *b*, adapted to revolve as described, and the hook-bolts *ee*, for supporting a carrier, as described.

" 2. The combination of the block *b* and the central vertical shaft and its connections, substantially as described."

The third claim covered a combination of the elements of the entire carrier, and is not claimed to be infringed, nor is it necessary to be described.

The description in the first claim, as well as in the specifications of the hook-bolts *ee*, for supporting the carrier, is clearly a mistake. The hook-bolts are lettered *mm*, and are described in the specification as bolts, "secured in the framework, the upper ends of which are turned over the block *b*, as shown," (in figure 4,) while *ee*, which are really hooked *arms*, shown in figure 2, attached to the block *b* at the lower end, and supporting the carrier at the upper end, should have been described as *arms* supporting the carrier.

Had the plaintiff, in his reissue, confined himself to the correction of an error so manifest, we should have found little difficulty in sustaining it; but in his application, which was made four years after the original patent, he makes no claim that his patent "was inoperative or invalid, by reason of a defective or insufficient specification," or by reason of his having claimed "more than he had a right to claim as new," or that any error had arisen "by inadvertence, accident, or mistake," without which the Commissioner has no right to grant a reissue, but simply prays that he may be allowed to surrender his original patent, and that "letters patent may be reissued to him for the same invention, upon the annexed amended specification." He makes no reference at all to the obvious mistake in his first claim, and although the point is not distinctly made in the briefs, we think it a serious question whether the Commissioner of Patents had any jurisdiction, under Rev. Stat. § 4916, to consider the application upon the bare statement that the patentee desired to surrender his patent and obtain a reissue. The Commissioner is authorized to reissue patents in certain specified cases, and if the petition makes no pretence of setting forth facts entitling the patentee to a reissue, it is exceedingly doubtful whether he obtains any jurisdiction to act at all.

Waiving this, however, the patentee annexed to his application a wholly different description and specification of his invention, as well as different drawings, differently lettered, showing

different views, though apparently of the same machine, and making six claims, the fifth and sixth of which correspond with the first and second claims of the original patent, with the mistake above mentioned corrected. All these claims were rejected, and the patentee acquiesced in the rejection of the fifth and sixth, which do not again appear. Two new claims were substituted, and these were also rejected, as having been met by former references. Subsequently a reissue was allowed, with the claims as herein stated.

The hook-bolts $mm$ of the original patent, ($b'$ of the reissue,) by the loosening of which the block $b$ (B of the reissue) was permitted to revolve, are not altogether omitted in the reissue, but are mentioned as " secured in the frame, and having their upper ends turned over the block, which allow it to be revolved easily in either direction." A new feature, however, is introduced in a cross-plate $b$, under the block as a support. The vertical shaft C passes loosely through this plate, and the centre of the block B. This plate is not noticed in the specification, and is not lettered in the drawing of the original patent, although the end of it is indistinctly shown in figure 2. The claims of the reissue, so far from being confined to a combination of the circular block, and the arms for supporting the carrier, or to the combination of the block, and the central vertical shaft and its connections, cover broadly any " movable independent cob-carrier, wherein are combined a supporting and revolving block, a carrying-frame, whose inner end is supported upon said block, and whose outer end is supported upon movable legs, and gearing applied at the inner end of the carrying-frame and capable of acting continuously, whether the carrying-frame is fixed in position, or being moved into a new position, substantially as described." The second claim is even broader.

Meantime, however, defendant had, for more than two years preceding the application for the reissue, been manufacturing and selling cob-carriers substantially the same in construction as that shown in the alleged infringing device. It also appears that plaintiff was unable to obtain royalties, or sell licenses under his original patent, by reason of his claims being too

narrow ; but that since he had succeeded in having the patent reissued with broadened claims, other manufacturers had submitted to his demand for royalties.

Under the rulings of this court, it is clear that this reissue cannot be supported. Not only was there no claim of a defective or insufficient specification ; none that the patentee had claimed as his own invention more than he had a right to claim as new ; none of inadvertence, accident, or mistake ; but four years after the original patent was issued, the patentee attempts to secure a reissue, with claims broadened for the purpose of covering that which is presumed to have been once abandoned to the public. All that has ever been said by this court in restraint of the practice of reissuing patents applies with full force to this case. *White* v. *Dunbar*, 119 U. S. 47; *Ives* v. *Sargent*, 119 U. S. 652; *Dunham* v. *Dennison Manufacturing Co.*, 154 U. S. 103.

A further question arises whether, where a patent has been surrendered and reissued, and such reissue is held to be void, the patentee may proceed upon his original patent. In other words, whether the surrender is good, though the reissue be void. As the law stood until 1870, it was held in *Moffitt* v. *Garr*, 1 Black, 273, that the surrender of a patent under the act of 1836 was a legal cancellation of it ; that no right could afterward be asserted upon it ; and even that suits pending for an infringement of such patent fell with its surrender, because the foundation upon which they were commenced no longer existed. See also *Reedy* v. *Scott*, 23 Wall. 352, 364.

By the act of July 8, 1870, Rev. Stat. § 4916, it was declared that the surrender shall take effect upon the issue of the amended patent; but it was intimated in *Peck* v. *Collins*, 103 U. S. 660, that the effect of an adverse decision on the title of a patentee to the invention would be as fatal to the original letters as to his right to a reissue. In delivering the opinion of the court, Mr. Justice Bradley observed that "since the decision of this case" (*Moffitt* v. *Garr*) "it has been uniformly held that if a reissue is granted, the patentee has no rights except such as grow out of the reissued patent. He has none under the original. That is extinguished.

. . . No damages can be recovered for any acts of infringement committed prior to the reissue. . . . It seems to us equally clear, that as the law stood when that decision was made, . . . a patent surrendered for reissue was cancelled in law as well when the application was rejected, as when it was granted. The patentee was in the same situation as he would have been if his original application for a patent had been rejected. . . . Surrender of the patent was an abandonment of it, and the applicant for reissue took upon himself the risk of getting a reissue or of losing all. A failure upon the merits, in a contest with other claimants, only gave additional force to the legal effect of the surrender."

In *McMurray* v. *Mallory*, 111 U. S. 97, it was held that the patentee, who had surrendered his patent and taken reissued letters on a new specification and for new claims, could not abandon the reissue and resume the original patent by a disclaimer. "This," said Mr. Justice Woods, "could be done only, if it could be done at all, by surrender of the reissued patent and the grant of another reissue." See also *Gage* v. *Herring*, 107 U. S. 640.

But, even if the patentee were able to fall back upon the original patent, counsel for the appellant, as well as his expert, admits that the combination described in the first claim of such patent was anticipated by certain patents to Brinsmead and Bryan, and that described in the second claim was also anticipated by a patent to one Nimbs. Assuming this to be so, it was clearly incompetent for the patentee to abandon these claims *in toto* and reconstruct his patent upon a different theory, in order to make it salable, or to hold as infringers other manufacturers who, in the meantime, had entered the field, relying upon his original patent as representing what he claimed to have invented and to be his own.

The decree of the court below is, therefore,

*Affirmed.*