336

Affirmed.

25 C.C.P.A.(Patents)

## In re MURRAY.
### Patent Appeal No. 3900.

Court of Customs and Patent Appeals.
April 4, 1938.

Usina & Rauber, of New York City (Joseph H. Milans, of Washington, D. C., and D. A. Usina and Benjamin T. Rauber, both of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

By this appeal there is brought to us for review a decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner denying patentability, in view of prior art cited, of a single claim, numbered 11, of an application filed January 19, 1935. Two claims numbered, respectively, 9 and 10, stand allowed. The rejected claim reads: "11. A furnace for boilers or the like for burning fuel in suspension having a bottom comprising parallel tubes spaced apart, each having in heat-conducting engagement with it a series of spaced short metal projections extending toward the next tube, the spaces being sufficient to pass substantially all the ashes to the floor below and the dimensions of the projections lengthwise of the tubes being less than said spaces and being so slight as to offer no substantial support for an accumulation of ashes."

The sole reference relied upon for anticipation is a patent, No. 1,762,335, granted to George P. Jackson June 10, 1930.

As disclosed by the application, the claimed invention relates to furnace bottoms in furnaces in which pulverized fuel is used. The here pertinent disclosure is one wherein there is an arrangement of a water tube boiler in which there are tubes located below the combustion chamber, such tubes being provided with projections or fins. The specification recites the following:

"* * * The floor of the chamber comprises a number of tubes 16 inclined downwardly toward the front and connected by headers 17 and 18 to the tubes of the front and back walls and thus into the circulation of the boiler. The water circulating through the floor tubes is heated and at the same time keeps the floor comparatively cool. Ashes and slag deposited thereon are cooled and are sufficiently granular to pass through the spaces between the tubes.

"The tubes are spaced apart as in Fig. 2 and have projections 19 extending outward therefrom, the projections from two adjacent tubes extending approximately across the space between them. The projections on the tubes provide an extension of the area exposed to the hot ashes and slag and increase the rapidity of the heat exchange with the water within."

From the claim itself it will be observed that the metal projections are described as being "short" and it describes the spaces, by which, as we understand it, is meant the spaces between the projections, as "being sufficient to pass substantially all the ashes to the floor below"; also, they are described as being greater than their dimension lengthwise of the tubes, this being apparent from the limitation reading, "the dimensions of the projections lengthwise of the tubes being less than said spaces"; and, further, it is said that the dimensions of the projections are "so slight as to offer no substantial support for an accumulation of ashes." The dimensional feature is described also in an amendment to appellant's original specification hereinafter quoted.

By reference to allowed claim 9, it is observed that the projections are there stated to be in the form of thin plates "with their narrow edges approximately horizontal and their wider faces approximately vertical," a matter to which allusion later will be made.

The reference patent discloses a boiler furnace in which there are tubes having fins with air inlets or passages between the tubes. The specification teaches: "As some of the ash * * * will settle upon the tubes 6 and on the sections of the fins 14 between the openings or inlets 16, it will be necessary from time to time to clean off such ash deposit, and for this purpose there is provided a door 26 through which a steam or air lance may be directed to dislodge the deposit and precipitate it, through the openings 16, to the floor 24."

It seems appropriate here to recite something of the history of appellant's application and the actions thereon, as shown by the record.

As originally filed, the application contained ten figures. In what seems to have been the first action of the examiner, on March 22, 1935, two claims numbered, respectively, 1 and 2 were rejected on the Jackson patent; they being described as "the only generic ones in the case," and division was required between claim 3 "drawn to the species shown in Figs. 2 and 4, and claims 4 to 7, drawn to the species shown in Fig. 10."

Responsive to this action, appellant amended his application by erasing figures 4 to 10, inclusive, of his drawings and canceling from the specification the matter descriptive of those figures. He also canceled certain other paragraphs of the specification and substituted therefor the following: "A'. The spaces between the projections 19 are sufficient to pass ashes to the pit below. The space from one projection 19 to the next is at least equal to the dimension of the projection lengthwise of the tube, and may be greater as illustrated. This relation is obtained and maximum surface exposure secured, by making the projections of greater dimensions transversely than lengthwise of the tube."

Also, he added two new claims numbered, respectively, 8 and 9.

On November 11, 1935, the examiner, reciting that claims 1, 2, and 4 to 7, inclusive, had been canceled, stated, "Claim 9 appears allowable as at present advised," but rejected claims 3 and 8 on the patent to Jackson, saying: "The amount of space left between the plates on applicant's tubes differentiates over the reference merely in degree. Clearly, the modification shown in applicant's Fig. 4 would not pass all of the ashes to the ash pit and probably would not pass much more than Jackson's arrangement would."

It will be noted that the examiner in that decision referred to "Fig. 4" which had been erased. In his response, under date of February 26, 1936, appellant directed attention to this fact and further amended by canceling rejected claims 3 and 8, and by adding two others numbered, respectively, 10 and 11.

In the next office action the examiner, reciting that claims 1 to 8, inclusive, had been canceled, stated, "Claim 10 appears allowable," but rejected claim 11 on the Jackson patent, saying: "Jackson contemplates allowing ash residue falling through openings 16, since he says the space 25 is provided for accumulation of such ash. The claim merely calls for spacing Jackson's fins a little farther apart than shown. This is clearly a matter of degree."

The rejection was made final and appellant appealed to the board.

In his statement following the appeal, the examiner, inter alia, said: "The patent

to Jackson shows a bottom for a pulverized fuel fired furnace formed of tubes 6 with projections or ribs 13, 14 attached to same to close the spaces between the tubes. These fins are interrupted at 16 to provide spaces for the ashes to pass therethrough to the ash pit 24. Such fins are placed in a horizontal plane; but applicant in his original disclosure also contemplated applying his fins in a similar horizontal plane, as was shown in his original figures 4 and 5."

There was thus again brought into the consideration of the case figures which had been erased from the application. The board made no reference to the erased figures, but did say that: "The only function attributed to the metal piece dimensions by applicant in his *original specification* was related to the welding operation, but he states * * * that the ashes pass through the spaces between the tubes." (Italics ours.) No reference is made to the amendment to the specification, A', quoted supra.

It is not altogether clear to us to just what extent the ashes in Jackson's device pass through the spaces between the projections attached to his tubes, but it is clear that the patent has no teaching that "substantially all" of them do—an express teaching of appellant with respect to his device. Upon the contrary, the patent teaches that ashes settle upon the tubes and on the sections of the fins in quantities which render it necessary from time to time to clean the deposit, and means are provided for that function. These means, while clearly disclosed, do not seem to be included in any of Jackson's claims. It is quite possible that they were old in the art.

In its decision, the board says: "Applicant states in his specification that no ashes accumulate on the projections but there is nothing in the specification to indicate that they are not blown off of the projections as in Jackson. The lateral position of the air blast in applicant's furnace would have a tendency to blow the ashes off whereas in Jackson a separate operation must be performed."

It does not seem to us that, under the facts of this case, it was incumbent upon appellant by any express terms to negative the idea that the ashes are blown off the projections. His teaching is that they do not accumulate there. Discussing the suggestion of the board touching the "tendency" of appellant's air blast "to blow the ashes off," appellant's brief says: "The air

for combustion comes in through the front wall 14. It is distributed evenly throughout the entire height of the wall. There is a constant draft upward within the chamber. The quantity of air is exactly calculated to combine with the quantity of fuel supplied in order to complete combustion. If there is any tendency of the combustion air that comes in at the lower part of the front wall 14 to blow ashes off the fins to the floor, it is trifling and is confined to the lower ends of the floor tubes."

Appellant's deductions in this regard impress us as being entirely reasonable.

Referring to the examiner's statement, quoted supra, relative to appellant's Figs. 4 and 5, showing appellant's original intent to have been to apply his fins in a horizontal plane similar to that of the reference patent, appellant's brief says: "This fact should lead not to the Examiner's conclusion, but to the very opposite one. *By striking out these figures and the broader claims that included them, applicant has emphasized the specific character of the present claim.* If the wording of the present claim were not alone sufficient, the striking out of Figs. 4 and 5 must leave no doubt that the claim excludes fins placed in a horizontal plane as in such figures and in the Jackson patent." (Italics quoted.)

This argument is based, at least in part, upon that portion of appellant's specification, already quoted supra, reading: " * * * Ashes and slag deposited thereon [on the floor] are cooled and are sufficiently granular to pass through the spaces between the tubes."

Upon this the brief of the Solicitor for the Patent Office makes the following comment: "Appellant's argument might have much force had the just quoted language clearly been limited to the construction shown in figures 2 and 3 of appellant's drawing. However, it appears on taking appellant's specification as a whole that the just quoted language taken from the specification is equally applicable to the form of the invention shown in figures 4 and 5 of appellant's original drawing. In these figures the spaces between the projections are much narrower and the showing is not substantially different from that in the Jackson patent."

The brief of the solicitor points out other features of appellant's original specification and drawings, now canceled, and there is also quoted from the specification as it read originally and still reads, the teaching

that: "A plurality of such projections *closely spaced* is advantageous." (Italics ours.)

There does not seem to have been objection made on the part of the tribunals of the Patent Office to appellant's erasures, cancellations, and substituted matter. We know of no rule of law which prohibits such action, and it seems to us that appellant, under the facts of this case, is entitled to have his application as it stands after amendment tested by the prior art, without reference to the cancelled features of his original application. Further, it does not seem to us that the teaching relative to the close spacing of the projections, still remaining in the specification, is inconsistent with the rejected claim.

Testing the claim as has been indicated, we feel constrained to hold that appellant sufficiently distinguishes from the prior art to justify the claim's allowance. His projections are dimensionally defined, and the drawings now in the case seem quite clearly to differentiate his device from that of the Jackson patent, and, as we see it, a new result is taught.

For the reasons stated, the decision of the Board of Appeals is reversed.

Reversed.