**FRASER et al. v. WILLIAMS.**

**No. 1403.**

District Court, E. D. Wisconsin.
July 14, 1945.

Brezina, Buckingham & Spengler, of Chicago, Ill., and Alvin M. Strnad, of Milwaukee, Wis., for plaintiffs.

Lecher, Michael, Spohn & Best, of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

Plaintiffs bring this action for alleged infringement of the trade-mark, trade name, and trade brand "RU-EX" and also for unfair competition. Defendant by counterclaim makes similar charges against the plaintiffs with reference to his trade-mark and trade name "RUX." Both RU-EX and RUX were and are used to designate pharmaceutical products in powder form for the treatment of rheumatism.

The defendant has established by abundant evidence, including documentary proof, his adoption and use of the name R.U.X. for his product as early as January, 1934, and the continuous use thereafter, first in the form of R.U.X., and after the latter part of 1936 as RUX. The principal sales of RUX have been on the West Coast and in various States west of the Mississippi River, although it also has been distributed in most of the other States. The largest volume of sales was between 1937–1941 inclusive, with 1938 being the peak year. R.U.X. and RUX were advertised principally over the radio and in newspapers and magazines. RUX was usually referred to as Rux Compound. During the same period defendant marketed another remedy known as Williams S.L.K. Formula, a stomachic.

As to the adoption and use of RU-EX prior to 1934, plaintiffs are forced to rely almost entirely upon the recollection of witnesses. That plaintiffs' business predecessor sold RU-EX in Canada in December, 1934, was sufficiently proved however. A Canadian license dated September 26, 1934, was granted to Ru-Ex Remedy Company of Toronto, Canada, and a certificate of registration was issued to the same company on November 2, 1934. The Canadian business was conducted solely in Canada, the labels and supplies being purchased there. A Canadian firm name and address were used.

It is doubtful that such proof is sufficient to establish in plaintiffs the exclusive trade-mark rights to the name in the United States. Moxie Co. v. Noxie Kola Co. of New York, D.C., 29 F.Supp. 167; Le Blume Import Co., Inc. v. Coty, 2 Cir., 293 F. 344. In any event the date of the Canadian sales is subsequent to the time when defendant had adopted and used R.U.X. in the United States.

Plaintiffs insist, however, that the sales in Canada show that the product had been successfully tried out at an earlier date in this country, and that a Chicago manufacturer would not undertake to market a remedy in Canada which had not first been established in the United States. While such is a permissible conclusion, it is one which does not necessarily follow. In a letter dated June 5, 1941, plaintiffs' business predecessor who supervised the Canadian business said, "There is one thing about Canada, it is good testing ground."

Any rights which the plaintiffs may have to the exclusive use of RU-EX stem from Charles G. Foucek who was the proprietor of a drug store at 1801 South Racine Avenue in Chicago. Foucek was of Bohemian nationality, and prior to 1924, in addition to the retail sales at his drug store, carried on a small mail order business in pharma-

ceutical preparations with others of his nationality, referred to in the testimony as the "Bohemian trade." He advertised in Czech almanacs and sent out catalogues to those replying, listing about twenty remedies. No catalogue or advertisement was produced wherein the name of RU-EX was used, but witnesses were produced who recalled that in the days when he operated his drug store, Foucek had a liquid preparation for rheumatism called "Rumix" and also a powdered preparation which he sometimes designated as RU-EX or Ru-Ex Powder.

Milton W. Folds, son of C. G. Foucek, was associated with his father during most of the period from 1917 to 1941. In 1924 the father sold the drug store at 1801 South Racine Avenue. From 1924 to 1929 he conducted a laboratory at 1832 South Racine Avenue, and one at 1020 South Wabash Avenue from 1929 to 1931, and another at 510 North Dearborn Street for a portion of the year in 1931, but separated from his son and opened a store and laboratory on Blue Island Avenue in the latter part of 1931; thereafter, from 1933 to 1940, he conducted a laboratory at 3635 West Cermak Road, at which place his son was again associated with him. The business relationship between father and son was somewhat informal. The son claimed to be a partner and testified, "We acted as partners, like father and son would. We always had a verbal partnership agreement."

The principal product made and sold by Foucek was Aurine Ear Balm. Foucek carried on the business sometimes under his own name but usually under the name of Aurine Remedy Company. Later an Illinois corporation was formed under the name, Aurine Co., Inc. Milton Folds devoted most of his time to promoting the sale of Aurine Ear Balm, especially after the father sold the drug store in 1924.

In addition to Milton Folds, the principal witnesses for plaintiffs were Miss Loy who was employed by Aurine Remedy Company from 1929 to 1932, and from late 1933 to the present time, and witness Michalek who was employed by Foucek from 1919 to 1933. Both testified that one of the remedies sold was RU-EX. In answer to the following leading question, "Did Mr. Foucek put on those rheumatic powders some trade-mark, the same trademark which is shown on this label, Exhibit 1, namely 'RU-EX?'" Michalek testi-

fied, "Well, the old man had several different names for the same. Sometimes he would call it 'RU-EX' and sometimes he would call it 'Foucek's Rheumatic Powders,' and he had different terms to call it, it was not consistent, but he did call it, I recall, 'RU-EX' and I also recall 'Rheumatic Powders.'"

Exhibit 1 referred to is a small partially printed and partially typewritten label. "Foucek's Premium Prescription" is printed across the top, under which, on separate lines, the words "No.," "Remedy For," and "Directions," are printed, each followed by a line for an insert, and the words "RU-EX," "Rheumatism," and "Follow Directions Enclosed In Box" are respectively typewritten in the blank spaces. Not much weight can be given to the label itself, as the name RU-EX easily could have been typewritten on an old unused label long after Foucek sold his store in 1924. In fact the testimony disclosed that on occasions some old labels had been used after plaintiffs' predecessors moved to a new location, but usually the address was then altered. However, Exhibit 8 is a label which contains the printed name RU-EX as well as directions for the use of the powder with the juice of four lemons. At the foot of the label appears "Aurine Remedy Company, 1020 So. Wabash Ave., Chicago." This is the only documentary proof that the name RU-EX was used by Foucek at all prior to the defendant's adoption and use of RUX in 1934.

The use of the term RU-EX on a remedy for rheumatism was old, as is shown by the trade-mark registration No. 116896 by Albert S. Glass under date of June 5, 1917. The basis for trade-mark rights is the association in the public mind of the mark with the goods. American Photographic Pub. Co. v. Ziff-Davis Pub. Co., 7 Cir., 135 F.2d 569, 573. Something more than mere adoption is essential. The use must be general, continuous, exclusive, and applied to the goods and used in trade under such circumstances of publicity and length of use as to show intention to adopt the mark for specific goods. Continental Corporation v. National Union Radio Corporation, 7 Cir., 67 F.2d 938.

The burden of proof rests heavier in this case than the usual preponderance of evidence required in civil cases, for plaintiffs must establish their contentions by evidence so cogent as to leave no reasonable doubt in the mind of the court that

the transactions occurred substantially as stated. H. Mueller Manufacturing Co. v. Glauber, 7 Cir., 184 F. 609, 618; Moline Plow Co. v. Rock Island Plow Co., 7 Cir., 212 F. 727, 732; American Lecithin Co. v. Warfield Co., 7 Cir., 128 F.2d 522, 526. Although the foregoing cases relate to the proof of prior invention, no good reason is perceived why the same rule should not apply to a prior use of a trade-mark. See Brewster-Ideal Chocolate Co. v. Dairy Maid Confectionery Co., 62 F.2d 844, 20 C.C.P.A. (Patents) 848. In a recent case, Empire Crafts Corporation v. National Silver Co., D.C.S.D.N.Y., 60 F.Supp. 1020, the court stated: " * * * The law applicable to patents where priority of invention is involved is equally applicable to trade-marks in that the plaintiff cannot rely on a mere preponderance of evidence, but must overcome the prior decisions by testimony which in 'character and amount carries thorough conviction.' * * *"

■■ I do not think the plaintiffs have presented the requisite degree of proof for the period prior to January, 1934, in order to establish priority of appropriation and use. True it is that Foucek's two sons and three other witnesses testified from recollection that Foucek had used RU-EX as the name for his powdered rheumatic remedy in the period before January, 1934; however, courts do not look with favor upon memory testimony given many years after the events occur. Adam Hat Stores, Inc. v. Monroe Shirt Co., Cust. & Pat. App., 143 F.2d 993; Becker v. Electric Service Supplies Co., 7 Cir., 98 F.2d 366; Raymond v. Royal Baking-Powder Co., 7 Cir., 85 F. 231. In addition, other circumstances cast a grave doubt upon the accuracy of the recollection of these witnesses. None of the business books or ledger sheets kept by plaintiffs' predecessors, such as ledger sheets pertaining to purchases of supplies, lists of names, printing bills or rental payments, makes any mention of RU-EX. They do, however, make mention of other products such as Aurine, Auro Capsules, Kleerex, Cherry Cough Balm, and Mykol, the latter being a liquid rheumatic remedy. The invoices, letterheads, order blanks, etc. which were used during the same period make no reference to RU-EX. The catalogue and copies of ads produced by plaintiffs are silent as to RU-EX, but do mention other products by their trade names. Recent orders sent by customers to the old addresses of plaintiffs' predecessors refer to Aurine, but not to RU-EX. Testimony that RU-EX ads had appeared in Chicago and Naperville newspapers was presented, but neither the records of the publishers nor copies of the ads were produced.

Because of all this I reached the conclusion that the plaintiffs have not met the burden of proof required to establish the priority of appropriation and use of RU-EX.

■ I have also considered defendant's contention that the plaintiffs lost any right to the trade-mark RU-EX by reason of a sheriff's sale upon execution in July of 1932. Certain physical assets used in the manufacture and sale of products at 510 North Dearborn Street were sold, but this was after C. G. Foucek had moved to the Blue Island address and was there carrying on his mail order business in a limited way. Milton Folds was in possession of the goods at the Dearborn Street address and whatever transfer of title to the physical assets may have occurred had no effect upon any right that Charles G. Foucek may have had to make use of the name and mark RU-EX.

Considering now the defendant's counterclaim, I am of the opinion that he conducted his business in such a manner that a court of equity should not grant him affirmative relief.

■ In 1936 defendant sent an application for registration of the name RUX to the United States Patent Office, which application, after some time, was denied. However, the defendant used the phrase, "Reg. U. S. Pat. Off." on its cartons and labels from 1937 to the date of trial. Defendant and his counsel admit that the defendant had no right to use such notation and claim it was unintentional and an oversight, and that Harry Williams had given instructions that the notation be eliminated. It is difficult to believe that the notation appeared for a period of years without the knowledge and acquiescence of the defendant. It is more likely that defendant desired to use up his old cartons and labels and took a chance. This constitutes misrepresentation to the public and is sufficient to bar equitable relief. Notaseme Hosiery Co. v. Straus, D.C., 231 F. 243.

Furthermore, since 1939 the plaintiffs have expended more than $500,000 in a vigorous nationwide advertising campaign.

They have featured the use of their product with lemon juice and have copyrighted some thirty-two phrases such as "For Rhenmatic Pain Try This Lemon Juice Recipe," and "For Rheumatic Pains Use Lemon Juice Recipe." After this advertising campaign was under way and in the latter part of the year 1940, the defendant began to feature the lemon juice recipe, using the phrase, "Rheumatic Pain Try New Lemon Juice Recipe." This obviously was an attempt by defendant to benefit from plaintiffs' extensive advertising campaign and could only cause confusion to the public.

Moreover, prior to 1939 defendant had operated under the name of Williams S.L.K. Laboratories and all of his labels and cartons were marked accordingly. But in 1939, after the start of plaintiffs' advertising campaign, he changed the labels and cartons by substituting Rux Laboratories for Williams S.L.K. Laboratories. However, he continued to invoice his customers as Williams S.L.K. Laboratories. This manner of invoicing of course would not come to the notice of the purchasing public.

In defendant's earlier labels the name "Williams" and R.U.X. appeared in the same size letters, and in some cases the name "Williams" even predominated. Then later the name "Williams" was deleted from the top of the label, and the word "RUX" was given the predominant position. It was not until after plaintiffs had demanded that the defendant cease using the word "RUX" that the name "Williams" was restored to the top of the label. Such business conduct was not playing the game fair. Selchow & Righter Co. v. Western Printing & Lithographing Co., D.C., 29 F.Supp. 569, 572. Defendant is not entitled to equitable relief.

While the decree to be entered will not enjoin the defendant from using the trade-mark RUX for reasons heretofore set forth, he may be enjoined from featuring a lemon juice recipe in phrases similar to those widely advertised and copyrighted by the plaintiffs. He may also be enjoined from using the name "Rux Laboratories" on his cartons and labels, and may be required to use the word "Williams" in conjunction with the word "RUX" when the latter word dominates the label or carton, the letters in the word "Williams" to be at least one-half the size of those in the word "RUX". De-

fendant will also be enjoined from using the notation "Reg. U. S. Pat. Off." on his cartons and labels, at least until such time as a registration may be approved.