**DILL MFG. CO. v. J. W. SPEAKER CORPORATION.**

**VAN DYKE et al. v. J. W. SPEAKER CORPORATION.**

Civil Actions Nos. 4478, 4508.

United States District Court
E. D. Wisconsin.

March 4, 1949.

Arthur J. Hudson, of Cleveland, Ohio, and David A. Fox, of Lines, Spooner & Quarles, all of Milwaukee, Wis., for plaintiffs.

Ira M. Jones, of Milwaukee, Wis., for defendant.

DUFFY, Circuit Judge (Acting District Judge).

The Dill Manufacturing Company (hereinafter called "Dill") is the exclusive licensee under Van Dyke U. S. Letters Patent Reissue 21,232, issued on October 10, 1939. The original application was filed January 9, 1936, and eventuated in Patent 2,075,486 dated March 30, 1937. The application for reissue was filed February 18, 1938.

Dill is the owner by assignment of Crowley U. S. Letters Patent Reissue 21,230, issued October 10, 1939. The original application was filed January 16, 1936, and eventuated in Patent 2,075,705 dated March 30, 1937. The application for reissue was filed February 18, 1938.

Dill is the owner of Crowley U. S. Letters Patent 2,272,965 issued February 10, 1942, on application filed February 23, 1938.

Each of the reissue patents relates to an electrically heated vulcanizing unit, and Crowley Patent 2,272,965 relates to a clamp adapted to function in connection with such a unit. Heat for the vulcanizing operation is provided by an electric heating element overlying a vulcanizing patch, pressure being applied by means of a clamp, which holds together the article being repaired, the patch and the heating element.

Civil Action No. 4478 was brought by Dill upon Crowley Reissue 21,230 and Crowley Patent 2,272,965. Civil Action No. 4508 was brought by Dill and Van Dyke on Reissue 21,232. The cases were consolidated for trial.

Plaintiffs rely on Claims 7 and 8 of Reissue 21,232, and on Claims 6 to 13 inclusive of Reissue 21,230. At the pre-trial conference held less than two months before trial, plaintiffs announced they would rely on Claims 2, 4, 8, 9, 14, 15 and 16 of Patent 2,272,965. However, prior to trial Dill filed disclaimers as to Claims 14 and 15, and also to Claim 1 not in suit.

It was stipulated that if the claims of the patents hereinbefore described are valid and if the defendant's claim of intervening rights be not sustained, then infringement is admitted.

The defendant presents several defenses: (1) That the claims in issue are invalid in view of patents set up as anticipatory, and are also invalid in view of the state of the art; (2) that the reissue patents are invalid because their reissue was not necessitated by inadvertence, mistake or accident in the prosecution of the original patents; (3) that defendant has an intervening right as to the reissue patents; and (4) that the alleged invention described and claimed in Crowley Patent 2,272,965 was in public use and on sale in the United States more than two years before the date of the application for said patent.

Considering the last named defense first, I find that in January, 1936, Mr. Speaker sold the vulcanizer (Exhibit I) to George Bothe at the Meeker Hill Garage. This was more than two years prior to February 23, 1938, the date of the application for Crowley Patent 2,272,965. Although plaintiffs claim they are charging infringement by defendant's current structure (Exhibit Q and electric heater and patch carrying plate AA and AA'), it is apparent that the claims of Patent 2,272,965 read upon Exhibit I. The drawings of Patent 2,272,965 seem to be almost a copy of Exhibit I. Moreover, Claim 8 (which is one of the claims in suit) does not read upon Exhibit Q, but does read upon Exhibit I.

During the period here under consideration, Title 35 U.S.C.A. § 31 provided that a person who had made an invention was entitled to a patent provided it had not been in public use or on sale in this country for more than two years prior to his application. Proof of a single unrestricted sale has been held sufficient to establish the defense of prior public use. Consolidated Fruit-Jar Co. v. Wright, 94 U.S. 92, 94, 24 L.Ed. 68; Egbert v. Lippmann, 104 U.S. 333, 336, 26 L.Ed. 755; Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 257, 8 S.Ct. 122, 31 L.Ed. 141.

In addition to Speaker's testimony, the recollection of the purchaser, Bothe, is clear and distinct. He places the date of his purchase of Exhibit I as prior to a severe and unusual blizzard which blocked all main highways and which was proved to have occurred in early February, 1936. The testimony of the witness Hauser is likewise corroborative.

I further find that Speaker publicly disclosed his vulcanizer similar to Exhibit I at his hotel during the period of the Automotive Service Industries Show held in Atlantic City in December, 1935. Various manufacturers' agents, who there saw and examined his vulcanizer, have testified that Exhibit I is similar to that which he displayed at that time. By January, 1936, some of these representatives had received units similar to the one exhibited to them at Atlantic City. The testimony of LeRoy Brown was convincing and established that defendant was in production of vulcanizers like Exhibit I either late in 1935 or early 1936. Brown had a remarkable memory for dates and details. He has no interest in the outcome of this litigation, and is entirely worthy of belief. The records of the Forrester Label Works also strongly indicate that defendant was producing electrically heated vulcanizers by January, 1936.

The burden of proof to establish public sale and use is on the defendant and the evidence must be clear and unequivocal. American Lecithin Co. v. Warfield Co., 7 Cir., 128 F.2d 522. The burden of proof rests heavier than the usual preponderance of evidence required in civil cases. The defendant must here establish its contention by evidence so cogent as to leave no reasonable doubt in the mind of the court that the transactions occurred substantially as stated. Fraser et al. v. Williams, D.C., 61 F.Supp. 763. I am of the opinion that the defendant has met the burden of proof resting upon it and has established that Exhibit I was on sale and in public use more than two years prior to the date of the filing of the application for Crowley Patent 2,272,-965. It follows that Crowley Patent 2,-272,965 is invalid.

## Reissue Patents

As originally filed the application for the parent Van Dyke Patent 2,075,486 contained Claim 1, and the application for the parent Crowley Patent 2,075,705 contained Claims 1, 2 and 8, all of which were readable upon the accused device. The examiner rejected such claims upon the prior art and the claims were cancelled.

As originally issued the Van Dyke parent Patent 2,075,486 had six claims. Claims 1, 3 and 5 were directed to the organization of a vulcanizing unit having two normally separable members adapted to cooperate with one another to have their components complete an electrical circuit through a heating element in one of the two members. Claims 2, 4. and 6 contained an additional limitation to a fusible connection in the electrical circuit. As the two members of the vulcanizing unit had to be engaged with one another in order to complete the electrical circuit through the heater, it is apparent that the original claims of Van Dyke Patent 2,075,486 did not read upon the Speaker unit G–G′, CC–CC′, or even the contemporary AA–AA′. However, the Van Dyke patent as reissued contains claims which do read upon the Speaker device.

As originally issued the parent Crowley Patent 2,075,705 contains seven claims, of which Nos. 1, 3, 5 and 7, while directed to the general organization of the vulcanizing unit, were specific as to a unit comprising two members, one of which had to be brought into engagement with the other to complete the electrical circuit through the resistance wire. The other claims of the patent related to fusible timing means. It is therefore again apparent that none of these original claims in Crowley Patent 2,-075,705 were readable upon the Speaker device. However, the Crowley patent as reissued does contain claims which read upon the accused device.

Crowley recognized that Van Dyke used the fusible solder connection on the member of the vulcanizing unit which also contained the wire heating element. After a single vulcanizing the entire member had to be discarded. Crowley's contribution was to make the heating element of the Van Dyke structure separable from the lower member which carries the vulcanizing patch. Crowley provided a device with a spring contact finger on the upper member. In order to establish contact, the two members had to be arranged in a pre-determined rotational relationship with each other.

Defendant insists great significance should be given to the dates of the applications for plaintiffs' patents, pointing out that the applications for the original pat-

ents, later reissued, were made within six weeks after Speaker displayed a device similar to Exhibit I at the Atlantic City show, and also that plaintiffs admittedly obtained one of the defendant's electromatic vulcanizers late in 1937 and that within six weeks thereafter both applications for the reissue patents were filed. Be that as it may, the claims of the reissue patents are broader than those in the original patents in that they bring defendant's device, Exhibits G–G' and CC–CC', within the monopoly. Supreme Manufacturing Corporation v. Security Manufacturing Company, 9 Cir., 299 F. 65, 68.

Title 35 U.S.C.A. § 64 provides for a reissue of a patent whenever it is "wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention  *  *  *."

The question of whether the decision of the Commissioner of Patents is conclusive that a statutory ground exists when he grants a reissue, or whether his decision is subject to review and possible reversal, is one on which the courts are in disagreement. In Topliff v. Topliff, 145 U.S. 156, 171, 12 S.Ct. 825, 831, 36 L.Ed. 658, it was stated such a review would not be made "unless the matter is manifest from the record." See: Van Kannel Revolving Door Co. v. Winton Hotel Co., 6 Cir., 276 F. 234, 238; Grand Rapids Show Case Co. v. Baker, et al., 6 Cir., 216 F. 341; Wayne Manufacturing Company, et al. v. Coffield Motor Washer Co., 8 Cir., 227 F. 987, where the courts held it was proper to review the decision of the Patent Office as to matters apparent on the record.

The view that the decision of the Commissioner may be reviewed by the courts is held in such cases as Yale Lock Manufacturing Company v. Berkshire National Bank, 135 U.S. 342, 378, 10 S.Ct. 884, 34 L.Ed. 168; Dobson v. Lees, 137 U.S. 258, 265, 11 S.Ct. 71, 34 L.Ed. 652; Huber v. Nelson Manufacturing Company, 148 U.S. 270, 290, 13 S.Ct. 603, 37 L.Ed. 447; Olin v. Timken, 155 U.S. 141, 148, 15 S.Ct. 49, 39 L.Ed. 100; Eby v. King, 158 U.S. 366, 371-373, 15 S.Ct. 972, 39 L.Ed. 1018; Hummel & Downing Co. v. Hinde & Dauche Paper Co., et al., 7 Cir., 272 F. 812; Union Switch & Signal Co. v. Louisville Frog, Switch & Signal Co., 6 Cir., 73 F.2d 550, 552; Cridlebaugh v. Rudolph, 3 Cir., 131 F.2d 795; Freeman v. Altvater, 8 Cir., 138 F.2d 854.

I am of the opinion that where, as here, no showing is made other than a bald statement in the application that the error arises from inadvertence, accident or mistake, the action of the Commissioner in granting a reissue patent is reviewable.

The applications for the Van Dyke Patent 2,075,486 and Crowley Patent 2,075,705, as well as the applications for the two reissue patents, were prepared and prosecuted by a highly regarded patent attorney of wide experience in the patent law. In neither of the applications for reissue is there any statement explaining any supposed inadvertence, accident or mistake.

Undoubtedly plaintiffs recognized the desirability of having claims in their patents which would read upon the Speaker device which came into their possession late in 1937. But the reissue statute was not intended to permit an inventor to correct errors of judgment or supply inventive concepts subsequently originating. In re Murray, 95 F.2d 336, 25 C.C.P.A., Patents, 1014. A reissue will not be granted merely for the purpose of expanding claims. Topliff v. Topliff, supra. The right to a reissue patent can only be justified by equitable principles. Keller, et al. v. Adams-Campbell Co., Inc., et al., 264 U.S. 314, 44 S.Ct. 356, 68 L.Ed. 705.

Plaintiffs' counsel frankly admits that his clients applied for the reissue patents to head off Speaker. He says in effect that they sought by means of the reissue claims to prevent defendant from going to a structure in which the upper and lower elements were fixed in a definite rotational relationship with one another. But plaintiffs of necessity had to have the two members in a fixed positional relationship in order to complete the electrical circuit. Obviously the claims in the reissue patents were deliberately applied for to bring with-

in the scope of the patents a structure plaintiffs knew the defendant was manufacturing. Defendant's patch units (Exhibit CC–CC') with the mica tab precluded rotation of the patch member. These units were being used by the defendant in late 1937 and were undoubtedly the ones examined by the plaintiffs. The reissue patents were applied for by the plaintiffs with this construction before them. They were not applied for to overcome invalidity or inoperativeness in the original patents because of inadvertence, accident or mistake in the prosecution thereof. In my opinion Reissue Patents 21,230 and 21,232 are invalid.

## Question of Intervening Rights

There has been considerable discussion in the briefs upon defendant's defense of intervening rights. In view of the conclusions of invalidity heretofore reached, a decision on the question of intervening rights is not required; however, should a reviewing court conclude that either or both of the reissue patents in suit are valid, a brief discussion of my view may be appropriate.

Defendant argues (1) that it was manufacturing its electro patches at the time the original Van Dyke and Crowley patents were issued, but that those patents did not contain claims which read thereon; and (2) that plaintiffs applied for the broadened reissues to encompass defendant's patch units; and (3) that, therefore, defendant acquired an intervening right which makes it immune from prosecution for infringement under the reissue patents, and that it enjoys an irrevocable and permanent license to manufacture and use the device without restrictions.

■ If the reissue patents were valid, defendant would have an intervening right, but in such eventuality I would not regard it to be as broad as stated by the defendant. Defendant does have some support from Walker on Patents, Deller's Ed., p. 1372, where it is stated:

"* * * An intervening right is said to be that right acquired by one who manufactures and/or sells an article or machine, or uses a process between the grant of an original patent, which does not claim such article or machine or process, and the filing of an application for a reissue which broadens the claims of the original, and who in consequence contends he is immune from liability and enjoys an irrevocable and permanent license to continue to manufacture and/or sell and/or use the invention without restriction. * * *"

What Deller says is that *some* cases have gone to the extent stated. Deller admits that the question is not free from difficulty, and cites many cases expressing various and somewhat conflicting views.

Counsel for both sides cite Sontag Chain Stores Co., Ltd. v. National Nut Co. of California, 310 U.S. 281, 60 S.Ct. 961, 84 L.Ed. 1204. This decision established the right of Sontag to continue the use of such devices as they had already purchased or acquired, but the court said nothing with respect to any right by Sontag to manufacture, acquire or sell additional machines after the date of the reissue patent. The Supreme Court cited with approval the case of Ashland Fire Brick Co. v. General Refractories Co., 6 Cir., 27 F.2d 744, where defendant, between the date of the original issue and the application for the broadened reissue, had built and operated two brick machines in a form not covered by the original patent, and had done so at a substantial expense, and had put them into commercial use on a large scale. The Court of Appeals said, 27 F.2d at page 746: "* * * the defendant thereby acquired at least a right to continue to use these two machines as if it held a license therefor under the reissued patent. * * *" In the Sontag case, supra, the Supreme Court, after citing this statement from the Ashland Fire Brick Co. case, supra, said, 310 U.S. at page 295, 60 S.Ct. at page 967, 84 L.Ed. 1204: "We think this conclusion was right and appropriate in the circumstances presented."

■ I conclude that, assuming the validity of the reissue patents, the defendant by reason of its intervening rights would have the privilege without limitation to use, sell, or otherwise dispose of any devices manufactured by it prior to October 10, 1939, the date of the reissue patents, but that such privilege would not extend to de-

vices manufactured or acquired after that date. Abercrombie & Fitch Co. et al. v. Baldwin, et al., 245 U.S. 198, 38 S.Ct. 104, 62 L.Ed. 240.

Counsel for defendant will prepare findings of fact and conclusions of law in conformity with this opinion and serve same upon counsel for plaintiffs prior to submitting same to this court.